[No. A120767. First Dist., Div. Three. June 30, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW BAMBERG, Defendant and Appellant.

[CERTIFIED FOR PARTIAL PUBLICATION*]

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.

## Counsel

Martin Kassman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye, Christina Vom Saal and Christopher W. Grove, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**McGUINESS, P. J.**—Appellant Andrew Bamberg contested a traffic citation for failing to stop at a stop sign. He introduced photographs to support his claim there was no stop sign at the intersection at which he purportedly committed the traffic violation. However, a number of the photographs relied upon by appellant actually depicted a different intersection. As a result of appellant's statements and actions in the traffic case, a jury convicted him of perjury, preparing false evidence, and concealing or destroying evidence. (Pen. Code, §§ 118, 134, 135.)

This appeal requires us to consider whether an unaltered photograph may be considered "false" within the meaning of Penal Code section 134,[1] which makes it a crime to prepare false evidence. We conclude the photographs offered by appellant were false in that they depicted something other than what appellant claimed they showed. Substantial evidence supports the conclusion that appellant prepared the photographs with the intent to deceive the traffic court. We shall affirm the judgment.

### Factual and Procedural Background

On March 12, 2005, appellant received a traffic citation for failing to stop at a stop sign at the intersection of Whipple Avenue and King Street in Redwood City. (Veh. Code, § 22450.) The intersection of Whipple and King is a four-way stop, i.e., there is a stop sign on each of the four sides of the intersection. King changes names as it intersects Whipple, which generally runs in an east-west direction. On the south side of Whipple, the cross-street is named King Street, whereas on the north side of Whipple, the cross-street is named Copley Avenue. Although the street that runs in a north-south direction changes names as it crosses the intersection with Whipple, the intersection forms a "perfect cross."

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

Appellant appeared in traffic court on May 10, 2005, to contest the ticket. Commissioner Susan Greenberg presided over the traffic court trial. The Redwood City police officer who issued the traffic citation testified that appellant had been traveling westbound on Whipple and had gone through the intersection of Whipple at King without stopping for the stop sign.

Appellant, who was sworn to tell the truth, testified there was no stop sign at King and Whipple. He acknowledged, however, there was a stop sign at Copley and Whipple (which is part of the same intersection). He introduced a total of five black-and-white photographs, which he claimed depicted the intersection of Whipple and King. He asserted the photographs proved there was no stop sign at the intersection.

Based on her familiarity with the area, Commissioner Greenberg recognized the first three photographs as the intersection of Whipple and King. However, she immediately recognized that the last two photographs did not depict the intersection of Whipple and King. One of the last two photographs showed a street sign for King but was taken so that it was not possible to read the name of the cross-street. After examining the photographs for a few moments, she realized they were of the intersection of Hopkins and King, which is about one block south of the intersection of Whipple and King. The commissioner was familiar with the intersection because she had driven through it five days a week for the previous five years. The intersection of Hopkins and King is not a four-way stop. Motorists traveling on King must stop at Hopkins, but motorists traveling on Hopkins, which runs parallel to Whipple, can cross King without stopping.

Commissioner Greenberg decided to take the matter under submission rather than rule from the bench. She informed appellant and the officer that she intended to visit the site of the traffic violation and asked whether there was any objection. Neither side objected. At the conclusion of the trial, the court returned to appellant the five photographs he had used to support his case. The court routinely returns evidence presented at traffic court trials due to the volume of cases and lack of storage space.

On her way home that evening, Commissioner Greenberg confirmed that the last two photographs appellant presented depicted the intersection of Hopkins and King, not Whipple and King. She recognized various landmarks at the intersection that appeared in the photographs she had seen earlier that day at trial. The next day, Commissioner Greenberg found appellant guilty of the traffic violation and assessed a fine of $215.50.

Redwood City Police Officer Gregory Farley had been present in court at the traffic court trial on May 10, 2005, and had heard appellant's testimony

that there was no stop sign at Whipple and King. Two days after the trial he drove to the intersection and determined there was, in fact, a stop sign at the intersection. However, he noticed the street sign at the intersection of Whipple and King, which should have read "King," instead had been replaced by a street sign that read "Copley." As altered, the signs on both sides of the street intersecting Whipple incorrectly read "Copley." Thus, there was no longer any street sign at Whipple and King that read "King." Officer Farley drove to the end of Copley, which terminates at Durlston. At that intersection, the Copley street sign was missing. A neighbor who lived near the intersection of Copley and Durlston had noticed the Copley sign was where it should have been on the morning of May 10, 2005, the date of appellant's traffic court trial. The following day about 7:00 a.m., he noticed the Copley sign was gone.

Appellant filed a notice of appeal from the traffic infraction on June 9, 2005. A settled statement hearing was set for August 2, 2005. The purpose of the settled statement hearing was to prepare a record of testimony and other evidence presented at trial for purposes of the appeal, in light of the fact the trial had not been transcribed by a court reporter. Only the evidence presented at trial is considered at a settled statement hearing; no new evidence is allowed. On July 21, 2005, a court clerk sent a letter to appellant requesting that he bring to the settled statement hearing the photographic evidence he had presented at trial.

On August 2, 2005, appellant and the police officer who issued the traffic citation appeared before Commissioner Greenberg for purposes of preparing a settled statement on appeal. Both were placed under oath by the court clerk. The commissioner asked appellant for the five photographs he had presented at the traffic court trial. Instead of presenting the five black-and-white photographs he had offered at trial, appellant presented 10 color photographs, which Commissioner Greenberg immediately recognized were not the photographs he had offered at the traffic court trial. In addition to the fact the photographs were in color, they had date stamps on the back that reflected a date after the traffic court trial. When Commissioner Greenberg told appellant the photographs were not the ones presented at trial, he argued with her and insisted they were in fact the photographs he had previously presented. She told appellant she had made notations at the time of trial demonstrating the photographs he was proffering were not the ones he had presented at trial.

Commissioner Greenberg reminded appellant he was under oath and gave him time "to gather his thoughts and get it together and review again the statement [the commissioner] prepared, which indicated the five photographs." After a break, appellant returned with three of the five original photographs he had offered at trial. The photographs depicted the intersection

of Whipple and King. The commissioner asked appellant for the other two photographs. He told her he did not have them with him but "perhaps" he had them at home. Appellant never produced the remaining two photographs depicting the intersection of Hopkins and King that had originally been offered at trial.

Redwood City Police Officer Evan Paraskevopoulos was present at the settled statement hearing. After the hearing, he asked appellant if he could speak to him regarding an investigation he was conducting. The officer told appellant he was investigating some of appellant's statements made at the earlier traffic court trial as well as the movement of street signs. Appellant was upset, raised his voice, and was irritated and accusatory. He denied touching any street signs at the intersections of Whipple and Copley or Durlston and Copley, although he admitted he was in the area to take photographs after the traffic court trial. He could not explain why he would take photographs *after* the traffic court trial. He acknowledged he was aware that Commissioner Greenberg had planned to visit the intersection of Whipple and King after the traffic court trial on May 10, 2005. Although the police had not found any fingerprints on the street signs, Officer Paraskevopoulos bluffed and told appellant his fingerprints had been found on the signs. Appellant then admitted he may have touched the Durlston, Copley, and King signs "to adjust them to get the correct effect for the photographs he was taking."[2]

An information filed April 17, 2006, charged appellant with two counts of perjury (§ 118), two counts of preparing false evidence (§ 134), and one count of misdemeanor destroying or concealing evidence (§ 135). On February 9, 2007, the trial court granted appellant's section 995 motion to dismiss one count of preparing false evidence. A jury found appellant guilty of the remaining charges on February 23, 2007. At the sentencing hearing on January 29, 2008, the trial court suspended imposition of sentence and placed appellant on supervised probation for a period of five years on the condition that he serve one year in county jail. Appellant timely appealed from the judgment.

---

[2] Appellant was never charged in connection with the movement of the street signs, and the prosecutor admitted in closing argument that she could not prove beyond a reasonable doubt that he had moved the signs. The prosecution introduced the evidence about the street sign movement to establish that appellant's actions were suspicious and inconsistent with a theory that he was simply mistaken about the placement of the stop sign or the location of the intersection.

## DISCUSSION

Appellant contends the evidence was insufficient to support his convictions for preparing false evidence (§ 134) and destroying or concealing evidence (§ 135). We address these contentions in turn.

### I. *Standard of Review*

When reviewing a judgment for sufficiency of the evidence, an appellate court "must 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138 [17 Cal.Rptr.2d 375, 847 P.2d 55].) "The reviewing court presumes in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698].) Circumstantial evidence may be sufficient to prove a defendant's guilt beyond a reasonable doubt. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329 [65 Cal.Rptr.2d 145, 939 P.2d 259].) To the extent our analysis turns on issues of statutory construction, our review is de novo. (See *People v. Morris* (2005) 126 Cal.App.4th 527, 535 [23 Cal.Rptr.3d 881].)

### II. *Preparing False Evidence*

Section 134 provides: "Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."

Appellant's conviction for violating section 134 was premised on his preparation of two photographs of the intersection of Hopkins and King that he claimed at trial depicted the intersection of Whipple and King. Appellant's challenge to the sufficiency of the evidence supporting his conviction for preparing false evidence is a limited one. He apparently concedes there is substantial evidence to establish that he prepared two photographs of the intersection of Hopkins and King with the intention of producing the evidence at his traffic court trial. He also impliedly concedes that a jury could reasonably find based upon the evidence that he had a fraudulent or deceitful purpose to convince the trier of fact the photographs were "genuine or true"

depictions of the intersection of Whipple and King. Furthermore, there appears to be no dispute that a photograph qualifies as an "other matter or thing" under section 134.[3]

Appellant's sole argument is that the photographs themselves were not "false" because they accurately depict the location where they were taken. He asserts it was his testimony about the photographs—but not the photographs themselves—that were false. According to appellant, in order to uphold a conviction for preparing false evidence, "the matter or thing prepared must *in itself* communicate a falsehood in order to constitute a false matter or thing within the meaning of section 134."

The question of whether under section 134 a matter or thing must itself be false—i.e., must be false on its face, without regard to what anyone may say about it—appears to be an issue of first impression. The few published cases interpreting section 134 involve written documents that were themselves "false" in that the writing was altered or obtained by fraud in anticipation of a hearing authorized by law. (See, e.g., *People v. Laws* (1981) 120 Cal.App.3d 1022, 1028–1030 [178 Cal.Rptr. 102] [fraudulently obtained receipt]; *People v. Clark* (1977) 72 Cal.App.3d 80, 82–83 [139 Cal.Rptr. 817] [altered signature on letter requesting summer employment]; *People v. Horowitz* (1945) 70 Cal.App.2d 675, 684–686 [161 P.2d 833] [forged will].)

■ Our task is to interpret the term "false" as it is used in section 134. When interpreting a statute, we must "determine the Legislature's intent so as to effectuate the law's purpose." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) "We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]" (*Ibid.*)

---

[3] Both section 134, which makes it a crime to prepare false evidence, and section 135, which makes it a crime to destroy or conceal evidence, employ the language "book, paper, record, instrument in writing, or other matter or thing." In *People v. Fields* (1980) 105 Cal.App.3d 341, 344 [164 Cal.Rptr. 336], the defendant contended he could not be convicted under section 135 for destroying marijuana, claiming the phrase "other matter or thing" was limited to writings when read in context with the other language of the statute. The court disagreed, holding that "other matter or thing" should be given its commonly understood meaning, which encompasses "an unending variety of physical objects," including marijuana. (105 Cal.App.3d at p. 345.) Similarly, a plain and commonsense interpretation of the phrase "other matter or thing" in section 134 would include a physical object such as a photograph.

"In California, there is no rule of strict construction of penal statutes. Such statutes are to be construed '. . . according to the fair import of their terms, with a view to effect [their] objects and to promote justice.' [Citations.] A statute is to be given a reasonable and common sense construction in accordance with its apparent purpose and the intent of the Legislature—one that is practical rather than technical and that will lead to a wise policy rather than to mischief or an absurdity [citation]. The legislative intent should be gathered from the whole statute rather than from isolated parts or words. All of the parts should be construed together if possible without doing violence to the language or spirit of the statute [citation]." (*People v. Fields, supra,* 105 Cal.App.3d at pp. 343–344.)

The dictionary contains a number of variants for the definition of the word "false." In the 11th edition of the Merriam-Webster's Collegiate Dictionary, the first listed definition is "not genuine." (Merriam-Webster's Collegiate Dict. (11th ed. 2007) p. 451, col. 1.) "False" is also defined to mean "adjusted or made so as to deceive" and "intended or tending to mislead." (*Ibid.*)

The plain language of section 134 does not require that a matter or other thing be altered or false "on its face," as appellant urges. The term "false" cannot be considered in isolation but must instead be construed together with the rest of statute. Whether evidence is "false" under section 134 depends upon what it is intended to depict or represent as "genuine or true." In other words, falsity is not an absolute quality. It can turn upon what the evidence is offered to prove.

In the case of a forged or altered legal instrument, such as a will, it is typically unnecessary to ask what the evidence is offered to prove. The document has independent legal effect and establishes legal rights and obligations. One can infer that a forged or altered legal document was prepared to deceive someone else into believing the document is genuine and should be given legal effect according to its terms.

A photograph, unlike a will, has no independent legal effect. For a photograph to have any legal significance as evidence, a person competent to testify about the photograph must generally explain when and where it was taken. A photograph merely depicts an image of what was in front of the camera lens at a particular moment in time. It may be "true" in the sense it accurately depicts whatever was in front of the camera, but that could be said of almost every photograph, unless it is digitally altered or otherwise retouched. However, even appellant concedes that a photograph need not be digitally changed or otherwise physically altered to qualify as "false." Appellant offers the example of a photograph that is staged, such as a picture

showing a person at the Grand Canyon, when in fact the person posed in front of a fake Grand Canyon background. Even in such a case, however, the photograph is "true" in the sense it accurately depicts a person standing in front of a fake Grand Canyon background. It is only when it is offered for the purpose of proving that the person was actually at the Grand Canyon that it becomes "false." The falsity turns upon what the evidence is offered to prove.

Appellant maintains the falsehood was in his testimony and not in the photographs. He asks the court to hypothesize that, instead of testifying that the photographs depicted Whipple and King, he testified accurately that the photographs depicted Hopkins and King. According to appellant, in such a hypothetical situation the photographs would not have been "false," thus establishing it was his testimony and not the photographs that were false. The problem with appellant's hypothetical is that it changes the purpose for which the photographs were offered from seeking to establish a falsehood to accurately describing what they represent. However, there would be no reason to offer the photographs except to establish a falsehood, because what they actually depict is irrelevant to the dispute. The photographs are "false" because they were offered as "genuine and true" depictions of something other than what they actually represent.

■ Even though appellant did not alter the photographs themselves, he literally "prepared" evidence with the intent to defraud the court in a proceeding authorized by law. He did not simply lie about the content of the photographs while testifying in traffic court. Rather, he prepared the evidence with the intention of defrauding the court into believing the photographs portrayed a location they did not in fact depict. Thus, it is not correct to say appellant's wrongful conduct was limited to lying under oath, as appellant suggests. ■ Preparing false evidence and testifying about the evidence are two distinct acts. One can testify falsely about evidence even though it may have been prepared without any intent to deceive.

Appellant's conduct in this case is no less culpable than if he had intentionally altered or staged a photograph with the intent to deceive the court. If he had digitally altered a photograph of Whipple and King to remove the stop sign from the intersection, there would be no question that he had prepared false evidence. Likewise, if he had staged a photograph by physically removing the stop sign from the intersection of Whipple and King, he could not legitimately dispute his conviction for preparing false evidence. Here, by taking photographs of the Hopkins and King intersection from an angle that would make them appear to be the intersection of Whipple and King, appellant effectively achieved the same purpose as a digital alteration or a more elaborate effort at staging. In each case, the photograph constitutes an attempt to falsely depict the intersection of Whipple and King.

Our conclusion is consistent with the legislative intent of section 134, to the extent it can be discerned from the language of the statute.[4] In general, the chapter in which section 134 is found makes it a crime to obstruct justice by suppressing testimony, inducing false testimony, suppressing evidence, or presenting or preparing false evidence. (See §§ 132–141.) The objective of section 134 is "to prevent the fraudulent introduction of material in a proceeding under the authority of law." (*People v. Clark, supra,* 72 Cal.App.3d at p. 84.) Considered in its entirety, the statute serves to prohibit attempts to perpetrate fraud in a legal proceeding by preparing evidence with the intent to mislead or deceive the trier of fact. Interpreting section 134 to cover appellant's conduct serves the purpose of the statute.

Appellant argues he is entitled to the benefit of every reasonable doubt to the extent the statute is reasonably susceptible to his proposed interpretation. He relies on the principle sometimes referred to as the "rule of lenity." (See *People v. Avery* (2002) 27 Cal.4th 49, 57 [115 Cal.Rptr.2d 403, 38 P.3d 1].) As Witkin explains: "[T]he existence of statutory ambiguity is not enough to warrant application of the general rule [of lenity], because most statutes are ambiguous to some degree. The rule applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 24, p. 53.) The rule is inapplicable " 'unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' " (*People v. Avery, supra,* at p. 58.)

There is no "egregious ambiguity" justifying application of the rule of interpretation urged by appellant. The supposed ambiguity appellant has identified results from considering the term "false" in isolation and without regard to the rest of the statute. When the term is considered in context, it is apparent that the determination of whether evidence is "false" turns on the purpose for which it is offered. Further, there is no need to guess at the Legislature's intent.

On the basis of Commissioner Greenberg's testimony, a reasonable jury could find that, in anticipation of the trial, appellant devised a scheme to deceive the traffic court judge. The jurors could reasonably find that appellant searched for a location on King Street that he believed was sufficiently similar to the intersection of Whipple and King but did not have a four-way stop. Finally, the jury could determine that appellant took photographs of the

---

[4] The Legislature added section 134 to the Penal Code in 1872 and has not amended it since. Thus, there is no legislative history to shed light on the Legislature's intent. (See 47 West's Ann. Pen. Code (1999 ed.) p. 281; *id.* (2009 supp.) p. 87.)

intersection of Hopkins and King so as to capture the King Street sign but not the Hopkins Street sign. Thus, he effectively staged the photographs by taking them from an angle that would support his plan to deceive the court into believing they depicted the intersection of Whipple and King.[5] The record does not support or suggest any innocent explanation for appellant to take photographs of a different intersection and present them at trial. By producing the photographs in court and testifying that they depicted one intersection when they actually depicted another, appellant demonstrated his intent to prepare false evidence in violation of section 134.[6] We conclude substantial evidence supports appellant's conviction.

III.   *Destroying or Concealing Evidence*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

#### DISPOSITION

The judgment is affirmed.

Siggins, J., and Jenkins, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 2009, S175446.

---

[5] We do not suggest that taking photographs from a particular angle in an attempt to highlight or deemphasize certain things constitutes preparing false evidence. The trier of fact may consider the weight to be given to physical evidence such as photographs, and it may take into account whether photographs accurately portray what they are claimed to depict. Here, appellant did not just take pictures of the relevant location to achieve some desired representation of the scene. Instead, he took pictures of an entirely different place for the purpose of deceiving the trier of fact into believing they were of the intersection relevant to the dispute.

[6] Section 132, which makes it a crime to offer a forged or altered document into evidence, is a separate offense from the preparation of false evidence under section 134. The two statutes are complementary. "[Section 134] applies to the *preparation* of a false or antedated document with the intent to produce it or allow it to be produced for any fraudulent purpose. [Section 132] applies to the actual *offer in evidence* of a false or fraudulently altered or antedated document." (*People v. Pereira* (1989) 207 Cal.App.3d 1057, 1068 [255 Cal.Rptr. 285].) Appellant was not charged with violating section 132, which is different from section 134 in several critical respects. First, section 132 does not apply to any "other matter or thing," but instead is limited to any "book, paper, document, record, or other instrument in writing." Second, section 132 does not use the word "false," but instead refers to documents that have been "forged or fraudulently altered or ante-dated."

[*] See footnote, *ante*, page 618.