[No. B221598. Second Dist., Div. Six. Jan. 25, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM TYNDALL MORRISON, Defendant and Appellant.

1552

COUNSEL

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and Eric E. Reynolds, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**COFFEE, J.**—Penal Code section 134 makes it a felony to prepare false evidence with intent that it be produced "upon any trial, proceeding, or inquiry whatever, authorized by law."[1] Here, we conclude that the statute is violated by a probationer who prepares a false urine sample with intent to produce it to his probation officer during court-ordered drug testing. Court-ordered probation drug testing is an "inquiry . . . authorized by law" within the meaning of the statute. (*Ibid.*)

William Tyndall Morrison appeals from a judgment after conviction by jury of preparing false evidence in violation of section 134. The trial court sentenced him to eight months in state prison,[2] suspended his sentence and granted him a five-year term of probation.

Appellant contends that section 134 does not apply to a probationer who provides a falsified urine sample to his probation officer if he provides it with intent to avoid a hearing. Alternatively, appellant contends that the trial court invaded the role of the jury when it instructed the jury that probation drug testing is an "inquiry authorized by law" and a probation revocation hearing is a "proceeding or inquiry authorized by law," within the meaning of the statute. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant concedes that he gave a false urine sample to his probation officer while he was on supervised felony probation, a term of which was periodic drug testing. As a result of the false test, he was charged with felony violation of section 134 and his probation was revoked.

---

[1] All statutory references are to the Penal Code.

[2] The sentence was concurrent with a three-year suspended sentence in a related probation violation case.

After the preliminary hearing on the felony charge, the court heard argument on the applicability of section 134 to the facts of the case. The court concluded that appellant should be held to answer on the charge. It initially said, "I'm not happy about it. It seems to me it ought to be a wobbler." It noted that violation of section 135 (willful destruction of evidence) is a misdemeanor. But the court concluded that the facts fell within the plain meaning of section 134. It explained, "I've been struggling for some intellectually honest way to read that language and say it doesn't apply and I can't find it."

Appellant then moved to dismiss the charge pursuant to section 995. The court denied the motion. It said, "the way these cases . . . read[], . . . if somebody goes into probation to try to produce a false test, they're doing so with the intention that they were going to pull something over on the probation officer and the Court if there's a probation violation hearing."

At trial, the sole witness was appellant's probation officer. Officer William Grimm testified that on March 4, 2009, appellant came to the Lompoc probation office for a routine visit. Officer Grimm asked appellant to provide a "urine" sample. He became suspicious when appellant turned away while giving the sample. The flow of urine did not sound like a normal, steady stream and the urine was unnaturally fluorescent yellow.

Officer Grimm asked appellant to roll up his sleeves. He found track marks. Appellant first claimed these were fishhook cuts sustained in the course of his occupation as a fisherman. He then admitted that he had used heroin two weeks earlier, and taken OxyContin within the last several days. He admitted that he had tried to adulterate the urine sample. Officer Grimm arrested appellant and transported him to the jail.

During booking, Officer Grimm thoroughly searched appellant and found a urine substitution apparatus in his pants. It consisted of a bottle secured by a string to the button of appellant's pants, a temperature strip, and a chemical warming packet that was attached by an adhesive strip to the inside of his pants. Appellant told Officer Grimm that he purchased the "kit" from a "head shop." Officer Grimm had seen similar apparatus about six or seven times over the course of 10 years as a probation officer.

The court instructed the jury on the elements of section 134, as follows: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant prepared any false or antedated book, paper, record, instrument in writing, or other matter or thing; [¶] 2. The defendant intended

to produce or allow to be produce[d] the matter or thing with a fraudulent or deceitful purpose, as genuine or true; AND [¶] 3. The matter or thing was to be produced at any trial, proceeding, or inquiry whatever, authorized by law . . . ." Over appellant's objection, the court further instructed the jury that: "A probation officer is a law enforcement official. [¶] Probation drug-testing is an inquiry authorized by law. [¶] A probation revocation hearing is a proceeding or inquiry authorized by law." The jury returned a verdict of guilty.

## DISCUSSION

### *Applicability of Section 134 to Appellant's Conduct*

The relevant facts are undisputed. We review de novo the application of a statute to undisputed facts. (*People v. Hassan* (2008) 168 Cal.App.4th 1306, 1313 [86 Cal.Rptr.3d 314].) We conclude that the plain language of section 134 applies to a probationer such as appellant who prepares a false urine sample with intent to produce it to his probation officer during court-ordered probation, a condition of which is drug testing.

■ Section 134 provides that a person is guilty of a felony if he or she (1) prepares a false matter or thing, (2) "with intent to produce it, or allow it to be produced" as true "upon any trial, proceeding, or inquiry whatever, authorized by law," (3) for any fraudulent or deceitful purpose. (*Ibid.*; see *People v. Bhasin* (2009) 176 Cal.App.4th 461, 469 [97 Cal.Rptr.3d 708].)[3] We are focused here only on the second element because appellant concedes that he prepared a false thing with a deceitful purpose.

Appellant denies that he acted "with intent to produce [the sample], or allow it to be produced . . . upon any trial, proceeding, or inquiry whatever, authorized by law," because he never intended that it be produced at a revocation hearing. Rather, he argues, he falsified the urine with intent to avoid a revocation hearing altogether.

■ Appellant construes the phrase "upon any trial, proceeding, or inquiry whatever, authorized by law" too narrowly. The phrase is broad enough

---

[3] Section 134 provides in full: "Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of [a] felony."

to include the gathering of urine samples by a probation officer during formal probation, as authorized by court order and statute. The statute is not limited to evidence that is produced in court proceedings. (*People v. Clark* (1977) 72 Cal.App.3d 80 [139 Cal.Rptr. 817] [introduction of false documents at a university grievance committee hearing violated § 134].) There is no requirement that the evidence actually be produced at all, only that the defendant intended it to be produced at any trial, proceeding, or inquiry whatever, authorized by law. (*People v. Laws* (1981) 120 Cal.App.3d 1022, 1038 [178 Cal.Rptr. 102].) Probation drug testing is an inquiry within the meaning of the statute.

 We construe the provisions of the Penal Code "according to the fair import of their terms, with a view to effect its objects and to promote justice." (§ 4.) We must "give effect to the words themselves [and] determine the effect of words used in light of the usual, ordinary import of the language employed," in order to give effect to the purpose of the law. (*People v. Clark, supra*, 72 Cal.App.3d at pp. 83, 85.) The purpose of section 134 is "to prevent the fraudulent introduction of material in a proceeding under the authority of law." (72 Cal.App.3d at p. 84.)

Section 134 unambiguously extends to evidence prepared for "any . . . inquiry whatever, authorized by law . . . ." Its terms and purpose require the conclusion that a probation officer who performs drug testing pursuant to a condition of formal probation is conducting an "inquiry . . . authorized by law" within the meaning of the statute. (*Ibid.*) The officer does so under order of the court and under authority of statute. (§§ 1203, subd. (a), 1203.1ab.) The urine test results must be recorded for use as evidence of the probationer's compliance or noncompliance with the terms of probation at subsequent court hearings. (§ 1203.10.) Section 1203.10 requires the probation officer to "keep a complete and accurate record" of the condition of the person committed to his or her care during the term of probation. The "record of such probation officer shall be and constitute a part of the records of the court . . . ." (*Ibid.*) Application of section 134 to a probationer who creates false evidence of probation compliance, upon which the court must rely to determine whether the probationer has been successful, is consistent with the statute's purpose of preventing fraudulent introduction of material in a proceeding under authority of law.

Appellant's reliance on the rule of lenity is misplaced because the statute is not susceptible of two reasonable interpretations. (*People v. Bamberg* (2009) 175 Cal.App.4th 618, 629 [96 Cal.Rptr.3d 139].) California's anti-lenity statute provides that "[t]he rule of the common law, that penal statutes are to be strictly construed, has no application to this Code." (§ 4.) Nevertheless,

constitutional guarantees of due process require that true ambiguities in a penal statute are resolved in a defendant's favor. (*People v. Avery* (2002) 27 Cal.4th 49, 58 [115 Cal.Rptr.2d 403, 38 P.3d 1].) But a court must "not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." (*Ibid.*) Thus, "[t]he rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable. [Citations.]" (*People v. Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165].) Like the trial judge, we cannot find a reasonable interpretation of section 134 that would exclude appellant's conduct. The legislative intent is evident and it is served by applying the statute to appellant's conduct.

The statute has not been routinely invoked to prosecute probationers, but that is not authority against such use. As the *Clark* court observed when the statute was first applied to conduct outside a courtroom, "section 134 has not been invoked outside the courtroom [but that] is not authority against permitting such use." (*People v. Clark, supra,* 72 Cal.App.3d at p. 84.)

*Jury Instructions*

The trial court did not invade the role of the jury when it instructed the jury, consistent with the law, that a probation officer is a law enforcement officer, probation drug testing is an inquiry authorized by law (§ 1203.1ab), and a revocation hearing is a proceeding or inquiry authorized by law (§ 1203.2). These instructions did not remove the issue of specific intent from the jury. The court properly instructed the jury that it must determine whether appellant "intended to produce or allow to be produce[d] the matter or thing with a fraudulent or deceitful purpose as genuine or true."

We reject appellant's argument that the instruction regarding revocation hearings was irrelevant, confusing and misleading. Although appellant may have been trying to avoid a revocation hearing, a probationer in appellant's position would reasonably have understood that records of a "clean test" would be helpful to him in any subsequent probation revocation proceeding. A reasonable jury could have inferred that appellant produced the false sample with the intent that a clean test result would be relied on by the court in any subsequent court proceedings concerning his compliance or noncompliance with the terms of his probation, including any future revocation hearing.

## DISPOSITION

The judgment is affirmed.

Gilbert, P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 20, 2011, S190981.