Filed 7/22/19; Certified for Partial Publication 8/14/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C085988 |
| Plaintiff and Respondent, | (Super. Ct. No. CM040382) |
| v. | |
| NICKESH PRAVIN SHAH, | |
| Defendant and Appellant. | |

After receiving a speeding citation, defendant Dr. Nickesh Pravin Shah duped an employee into signing a letter falsely stating that defendant was responding to a medical emergency at the time of the traffic stop. Defendant's attorney eventually entered the letter in evidence at his traffic trial.

After the traffic trial, defendant was charged with violating Penal Code sections 132 and 134 by preparing and offering the forged letter as false evidence. A jury found defendant guilty of both offenses, and the trial court suspended imposition of sentence and placed defendant on probation.

On appeal, defendant contends that the judgment must be reversed because the trial court (1) failed to instruct the jury that materiality is an element of the offenses;

1

(2) erroneously instructed the jury on the definition of forgery as it relates to the violation of Penal Code section 132 (count 1); (3) erred in denying his motion to dismiss the felony complaint as an impermissible successive prosecution for the same act or course of conduct; and (4) impaired his constitutional right to present a defense through its evidentiary rulings. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In early 2013, defendant accepted through a staffing agency a temporary position as a physician at a health clinic. The clinic was small, with just two physicians and a staff of approximately eight to nine people. The clinic hired defendant to care for the patients of one of the doctors who was on leave.

On the morning of April 3, 2013, at approximately 10:00 a.m., defendant was driving to work when a California Highway Patrol (CHP) officer stopped him for speeding. At the time of the stop, defendant was late for work, which was not unusual.

When informed of the reason for the stop, defendant told the officer that he was en route to a medical emergency and needed to be there within the next 10 minutes. The officer asked defendant the nature of the medical emergency, and defendant responded, "A gall bladder." Defendant told the officer he would be performing surgery on the patient.

The officer asked defendant if there was someone who could confirm this information. Defendant gave the officer the name and telephone number of a supervisor at the clinic. Defendant said she would know if there was an emergency. The officer called the number and spoke to the supervisor. The supervisor denied there was an emergency and told the officer that defendant "was just late to see his regularly scheduled patients."[1]

---

[1] This was not the first time that defendant falsely claimed he was responding to an emergency to avoid a speeding ticket. At trial, a San Francisco police officer testified

2

When the officer relayed this information, defendant responded that the supervisor must be working on the other side of the facility and unaware of the emergency. The officer, unpersuaded, cited defendant for speeding, but suggested that the district attorney might dismiss the citation if defendant could provide documentation showing that he was, in fact, responding to an emergency.

A couple of weeks later, defendant had his office manager sign a letter relating to the traffic stop. The letter stated: "This letter is to confirm that [defendant] was on his way to an emergency in order to attend to a patient at this facility on April 3rd, 2013[,] at 10:00 a.m. with severe abdominal pain and concern for a gall bladder infection." The letter was dated April 16, 2013. Defendant, through his attorney, subsequently offered the letter in evidence at the trial on his speeding citation. The traffic court judge nevertheless found defendant guilty.

After the traffic trial, the prosecutor filed a felony complaint against defendant charging him with violations of Penal Code sections 132 and 134[2] for preparing and offering false and fraudulent evidence at the traffic trial. Defendant pled not guilty.

At trial, the supervisor who received the call on the day of the traffic stop testified that she had no knowledge of any patient in distress or any kind of emergency on the morning of April 3. She testified that because it was a small clinic, the staff was generally aware of what was happening in the office and that in her supervisory position, the other medical assistants would come to her if anything unusual was happening.

The office manager for the clinic similarly testified that she was not aware of any patients in the clinic with significant health issues on the morning of April 3. Dr. Foster,

_____

that when he stopped defendant for speeding in 2010, defendant told the officer he was "on an emergency call" heading to the University of California, San Francisco, Medical Center. The officer asked for proof, but defendant was unable to substantiate the emergency.

[2] Further undesignated statutory references are to the Penal Code.

3

the other physician working at the clinic, testified that he did not treat anyone with an emergency on the morning of April 3 and, to his knowledge, there were no calls for emergency transport.

At trial, the office manager was asked about the April 16, 2013, letter she signed falsely stating that there was an emergency. She testified that defendant misled her to believe that the letter was intended to help defendant terminate his contract with the temporary staffing agency through which he was employed. She did not draft the letter or read it before she signed. She testified that "[defendant] brought [the letter] in, told me what it was for, and I said 'Okay,' and I just signed my name."

Defendant did not put on an affirmative defense case.

The jury found defendant guilty of violating sections 132 and 134. The trial court suspended imposition of sentence and placed defendant on probation for 36 months with a number of special conditions.

## DISCUSSION

## I

### *The Court Did Not Err in Failing to Give a Materiality Instruction*

Defendant concedes that neither section 132 nor section 134[3] contain an express materiality element like that in the perjury statute, section 118, subdivision (a). Nevertheless, citing *People v. McKenna* (1938) 11 Cal.2d 327 (*McKenna*), *United States*

---

[3] Section 132 provides: "Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or antedated, is guilty of felony."

Section 134 provides: "Every person guilty of preparing any false or antedated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."

4

*v. Alvarez* (2012) 567 U.S. 709 [183 L.Ed.2d 574] (*Alvarez*), and *People v. Morera-Munoz* (2016) 5 Cal.App.5th 838 (*Morera-Munoz*), defendant argues that a materiality requirement must be implied to save the statutes from being unconstitutionally vague and overbroad, and that the trial court's failure to instruct on materiality violated his due process rights. We find no merit in defendant's position.

In *McKenna*, the defendant appealed her convictions for perjury, forgery, offering false evidence in violation of section 132, and preparing false evidence in violation of section 134, arguing that the documents she altered and fabricated were immaterial to any of the issues in the consolidated cases. (*McKenna*, *supra*, 11 Cal.2d at p. 332.) Without discussion, the Supreme Court characterized the defendant's argument as directed to the counts charging her with preparing and offering false evidence. (*Id.* at pp. 333-334.) After reviewing the evidence, the court rejected the defendant's argument, concluding that the documents at issue were in fact material and that the trial court committed no error "in instructing the jury that the alterations were material." (*Id.* at p. 335.)

As the People correctly observe, the issue of whether sections 132 and 134 contain a materiality requirement was not raised in *McKenna*. The court simply assumed that the issue of materiality pertained to those charges for purposes of the decision. Thus, the passing reference to materiality in *McKenna* is dictum and has little persuasive value. (*California Chamber of Commerce v. State Air Resources Bd.* (2017) 10 Cal.App.5th 604, 640 [cases are not authority for propositions not considered therein].)

The United States Supreme Court's decision in *Alvarez* is distinguishable as a First Amendment free speech case. In *Alvarez*, the court addressed the constitutionality of the Stolen Valor Act of 2005 (18 U.S.C. § 704(b)), which makes it a crime to falsely claim receipt of military decorations or medals. (*Alvarez*, *supra*, 567 U.S. at p. 714.) Construing the Stolen Valor Act as a content-based restriction, the court affirmed a judgment concluding that the Act unconstitutionally infringed upon speech protected by the First Amendment. (*Id.* at pp. 729-730.) Here, defendant alleges a violation of his due

5

process rights, not his right to free speech. Thus, defendant's reliance on *Alvarez* is misplaced.

*Morera-Munoz* likewise does not support defendant's position. In that case, the court considered a constitutional challenge to Vehicle Code section 31, which criminalizes giving false information to law enforcement officers engaged in the performance of their duties. Although the court concluded that the statute did not violate the First Amendment, it agreed with the parties that Vehicle Code section 31 should be construed to include a materiality requirement to comport with due process.[4] (*Morera-Munoz*, *supra*, 5 Cal.App.5th at p. 856.) Defendant argues that this part of the ruling is controlling here because sections 132 and 134 are "directly comparable" to Vehicle Code section 31. Defendant overstates the similarity.

First, the conduct targeted by sections 132 and 134 is far narrower than Vehicle Code section 31, which applies to any false information given to a peace officer in the performance of his or her duties. Since peace officers receive a great deal of information in the course of their duties, without a materiality requirement, Vehicle Code section 31 would lack the " 'necessary connection between the prohibited false information and [any] law enforcement resources . . . used to disprove it.' " (*Morera-Munoz*, *supra*, 5 Cal.App.5th at p. 856.)

In contrast, sections 132 and 134 are concerned with false or fraudulent instruments prepared for or offered in evidence at a legal proceeding. The statutes require that the instrument itself be false or forged, not merely that it contain some false information. And because sections 132 and 134 only apply in the context of legal

---

[4] *Morera-Munoz* discusses a report prepared by the Office of the Legislative Counsel analyzing Vehicle Code section 31 that suggests courts might read a materiality element into the statute, and the People conceded on appeal that the statute would be unconstitutional without a materiality requirement. (*Morera-Munoz*, *supra*, 5 Cal.App.5th at pp. 855, 857.)

6

proceedings, unlike a violation of Vehicle Code section 31, there is a clear connection between the false evidence and the resources that would be used to disprove it.

Second, unlike Vehicle Code section 31, importing a materiality element is not necessary to ensure that sections 132 and 134 do not impose substantial criminal penalties on relatively trivial or innocent conduct. By its own terms, section 134 only applies to false evidence prepared with the intent to produce it (or allow it to be produced) in a legal proceeding for a "fraudulent or deceitful purpose," i.e., to mislead or deceive the trier of fact. (§ 134; *People v. Bamberg* (2009) 175 Cal.App.4th 618, 629.) Section 132 only applies to forged or fraudulently altered documents or instruments offered in evidence at a legal proceeding. (§ 132.) The objective of section 132, as with section 134, is to prevent the fraudulent introduction of material in a proceeding under the authority of law. (*People v. Pereira* (1989) 207 Cal.App.3d 1057, 1068 (*Pereira*).) The conduct punished by the statutes will rarely, if ever, be trivial or immaterial.

Finally, although we have not found any authority expressly deciding whether section 132 or 134 include a materiality requirement, numerous appellate decisions have applied these statutes without making any reference to materiality. (See, e.g., *People v. Morrison* (2011) 191 Cal.App.4th 1551, 1555 [submission of false urine sample to deceive probation officer]; *People v. Bamberg*, *supra*, 175 Cal.App.4th at p. 629 [staged photographs of intersection prepared to deceive traffic judge]; *Pereira, supra*, 207 Cal.App.3d at pp. 1068-1069 [altered loan document sent to FPPC]; *People v. Bhasin* (2009) 176 Cal.App.4th 461, 468-470 [preparing and offering false document at trial].)

And at least one court, construing a very similar statute, expressly rejected the argument that materiality was an element of the offense. In *People v. Feinberg* (1997) 51 Cal.App.4th 1566, the defendant was convicted of offering a false or forged

7

instrument for recordation in violation of section 115.[5] (*Id.* at pp. 1572-1573.) The Court of Appeal rejected the argument that the trial court erred in failing to instruct the jury that materiality is an element of the offense, reasoning that not all crimes of falsity have a materiality requirement. (*Id.* at pp. 1578-1579.) The court found it persuasive that the text of section 115 does not suggest materiality is an element of the offense, and that the chapter of the code in which the statute appears, " 'Forging, Stealing, Mutilating, and Falsifying Judicial and Public Records and Documents,' " does not refer to materiality. (*Id*. at p. 1578.)

The same reasoning applies here. As noted, neither section 132 nor section 134 contain an express materiality requirement, and in the chapter in which those statutes appear, entitled "Falsifying Evidence, and Bribing, Influencing, Intimidating or Threatening Witnesses," only two statutes out of 18 reference materiality.[6] It is well settled that "[w]hen the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' " (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576.)

For all these reasons, we conclude that materiality is not an element of the offenses, and that the trial court did not err in denying defendant's request for a materiality instruction.

---

[5] Section 115, subdivision (a) provides: "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."

[6] See section 137, subdivisions (a) through (c) and section 141, subdivision (c).

## II

### *The Trial Court's Definition of Forgery Did Not Mislead the Jury*

Defendant contends that the trial court erroneously instructed the jury with an overbroad definition of forgery for purposes of count 1 (violation of section 132), thereby removing any limitation on the types of documents that could constitute the basis of a section 132 violation. Defendant further contends that if the court had used a proper definition, the evidence would not have been sufficient to support a conviction under section 132. We find no reversible error.

In count 1, defendant was charged with a violation of section 132. The court instructed the jury on section 132 as follows:

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant offered in evidence, as genuine or true, a paper or document or other instrument in writing upon trial; [¶] and,

"2. The defendant knew that the paper or document or instrument in writing was forged.

"Evidence is defined broadly to include the testimony of witnesses, writings, material objects, or any other things presented as a basis of proof.

"Forged means to make a false or fictitious document with the intent to defraud.

"A defendant's presence at the time the evidence is offered is not necessary if he voluntarily absented himself from the proceedings.

"A defendant may appear at a judicial proceeding through counsel.

"A defendant's attorney has the authority to offer items in evidence on behalf of a defendant whether the defendant is absent or not present."

We review de novo whether a jury instruction correctly states the law. (*People v. Franco* (2009) 180 Cal.App.4th 713, 720.) Our task is to determine whether the court " ' "fully and fairly instructed on the applicable law." ' " (*Ibid*.) The correctness of jury

instructions is to be determined from the instructions as a whole and the entire record of trial, including the arguments of counsel. (*Ibid.*) If reasonably possible, we interpret the instructions to support the judgment rather than to defeat it. (*Ibid.*)

Here, defendant argues that the instructions incorrectly state the law on the meaning of the term "forged." We disagree.

The crime of forgery is committed when one makes or passes a false instrument with intent to defraud. (See, e.g., *People v. McAffery* (1960) 182 Cal.App.2d 486, 493; *People v. Morgan* (1956) 140 Cal.App.2d 796, 800; see also *People v. Gaul-Alexander* (1995) 32 Cal.App.4th 735, 741 [describing three elements of forgery as (1) a writing or other subject of forgery, (2) the false making of the writing, and (3) intent to defraud]; *People v. Parker* (1967) 255 Cal.App.2d 664, 672 [defendant guilty of forgery where victims were induced by trick or device to sign trust deeds to their property without knowing they were signing such a document]; *People v. Nesseth* (1954) 127 Cal.App.2d 712, 719 ["procuring of a genuine signature to an instrument by fraudulent representations constitutes forgery"].) The trial court's instruction defined the term "forged" to mean a false or fictitious document made with intent to defraud. The trial court's instruction is consistent with this broad definition of forgery.

Defendant argues that, at common law, to constitute forgery, a forged instrument also must affect some cognizable legal or property right. However, defendant was not charged with common law forgery—he was charged with a violation of section 132. In that context, we are not persuaded that the statute requires a prosecutor to show that the forged evidence would affect some separately identifiable legal right in addition to the legal rights at issue in the proceeding for which it was offered. The legal efficacy of the document is established by the other elements of the offense. To conclude otherwise would be to undermine the purpose of the statute, which serves to " 'prevent the fraudulent introduction of material in a proceeding under the authority of law.' " (*Pereira*, *supra*, 207 Cal.App.3d at p. 1068.)

10

Here, the jury specifically was instructed that the term "[f]orged means to make a false or fictitious document with the intent to defraud." Consistent with section 132, it also was instructed that to prove guilt, the jury must find the defendant "offered in evidence, as genuine or true, a paper or document or other instrument in writing upon trial." Thus, the trial court's instructions did not, as defendant argues, unlawfully expand the types of documents that could constitute the basis of a section 132 violation. To the contrary, the court's instructions followed and somewhat narrowed the types of documents that could constitute a violation to a *document* (or paper or other written instrument) *offered in evidence at trial* that the defendant *knew was false* and made with the *intent to defraud.* Considering the instructions as a whole, there is no reasonable likelihood that the jury was misled by the lack of a specific instruction on the April 16, 2013, letter's legal efficacy.

## III

### *The Trial Court Properly Denied Defendant's* Kellett *Motion*

At trial, defendant filed a motion under *Kellett v. Superior Court* (1966) 63 Cal.2d 822 (*Kellett*) arguing that his traffic citation should be joined with the felony charges in a single prosecution. The trial court denied the motion. Defendant contends that the trial court erred and violated his constitutional due process rights when it denied the motion. We find no error.

*Kellett* is the leading case construing section 654's bar against successive prosecutions of related offenses. In *Kellett*, our Supreme Court held that when "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Kellett, supra*, 63 Cal.2d at p. 827, fn. omitted.) The *Kellett* rule applies only

11

when (1) the prosecution was or should have been aware of more than one offense, and (2) the same act or course of conduct played a significant part in both offenses. (*Id*. at p. 827.)

Defendant argues that the same evidence was presented in both trials, and that the violations of sections 132 and 134 were completed and were known to the prosecution at least four months before the traffic trial, when defendant's attorney allegedly provided the April 16, 2013, letter to the district attorney. Defendant also notes that the same prosecutor who handled the speeding trial also investigated the veracity of the letter and signed the felony complaint. Thus, defendant concludes that the speeding ticket and the violations of sections 132 and 134 should have been prosecuted concurrently. We disagree.

Courts have adopted two tests to determine whether multiple offenses arise out of the same act or course of conduct. (*People v. Ochoa* (2016) 248 Cal.App.4th 15, 28.) The first test, referred to as the " 'time and place test,' " focuses on whether the offenses were committed at the same time and location. Under this test, multiple prosecutions generally are not barred if the offenses were committed at separate times and locations. (*Id*. at pp. 28-29.)

The second test—the " 'evidentiary test' "—looks to the evidence necessary to prove the offenses. (*People v. Ochoa, supra*, 248 Cal.App.4th at p. 29.) This test looks to the totality of the facts to determine whether the same evidence was used to establish both offenses. (*People v. Flint* (1975) 51 Cal.App.3d 333, 337-338.) However, simply using facts from one prosecution in a subsequent prosecution does not by itself trigger the bar of successive prosecutions. (*People v. Valli* (2010) 187 Cal.App.4th 786, 799.) Under the evidentiary test, two offenses must be prosecuted together only if the evidence needed to prove one offense " 'necessarily supplies proof of the other.' " (*Ibid*.)

12

We review factual determinations for substantial evidence, viewing the evidence in the light most favorable to the People. Whether section 654 applies is a question of law, reviewed de novo. (*People v. Valli, supra,* 187 Cal.App.4th at p. 794.)

Here, the trial court correctly concluded that "the same act or course of conduct" did not play a significant part in both offenses. Defendant's offenses were not committed at the same time and place. The speeding offense occurred on the morning of April 3, 2013, when he exceeded the posted speed limit. (See Veh. Code, § 22349, subd. (a).) The violation of section 134 (preparing false evidence) occurred nearly two weeks later, when defendant prepared the letter and induced his office manager to sign it under false pretenses. The violation of section 132 charged in the complaint (offering a forged document) occurred months after the false letter was prepared, when defendant's attorney offered the letter in evidence at defendant's traffic trial.

Although the speeding violation may have been the impetus for the subsequent crimes, the test for resolving whether the "same act or course of conduct" played a significant part in both offenses is "not whether one offense led to the second offense." (*People v. Hendrix* (2018) 20 Cal.App.5th 457, 465, 466.) Because the offenses were factually distinct offenses occurring at different times and different locations, the offenses were not required to be prosecuted together under the "time and place test."

Separate prosecutions also were proper under the "evidentiary test." Even if some evidence in the two trials overlapped, the evidence needed to prove the first offense did not necessarily supply proof of the other. (*People v. Hurtado* (1977) 67 Cal.App.3d 633, 636.) Evidence that defendant exceeded the speed limit on April 3, 2013, did not supply proof of the violation of section 132 or 134. The offenses are based on separate evidentiary requirements: speeding, on one hand, and preparing and offering a false and fraudulent document in court, on the other. Indeed, the violation of section 132 was charged based on defendant's act of offering the forged letter *as evidence at his traffic*

13

*trial.* This could not have been charged before the trial. Thus, under either test, the trial court properly denied the *Kellett* motion.

IV

*Evidentiary Rulings*

A.    *The trial court properly excluded the evidence related to Dr. Smith's alleged substance abuse issues*

During trial, defendant repeatedly sought to admit evidence relating to the alleged substance abuse issues of Dr. Smith, the physician defendant replaced at the clinic. The material that defendant sought to admit included evidence that (1) at the time Dr. Smith stopped seeing patients, he was seriously impaired due to substance abuse; (2) Dr. Smith had been arrested at least two times for DUI; (3) Dr. Smith agreed to surrender his license after an investigation by the Medical Board of California due to substance abuse; (4) the father of one patient sued Dr. Smith for wrongful death based on improper dosage of a prescription medication; (5) in April of 2013, Dr. Smith was undergoing substance abuse rehabilitation; and (6) Dr. Smith died due to cirrhosis of the liver.

The trial court excluded the evidence, concluding that it was not relevant and that under Evidence Code section 352, any probative value would be substantially outweighed by the probability that its admission would necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. Defendant contends that the trial court erred in excluding the evidence. We disagree.

Relevant evidence is that which has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The test is whether the evidence tends " ' "logically, naturally, and by reasonable inference" to establish material facts . . . .' " (*People v. Scheid* (1997) 16 Cal.4th 1, 13.)

Even if evidence is otherwise relevant and admissible, Evidence Code section 352 authorizes the trial court to exclude evidence "if its probative value is substantially

14

outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

We review such evidentiary determinations for an abuse of discretion. (*People v. Scott* (2011) 52 Cal.4th 452, 490.) We find no abuse here. The trial court properly concluded that the challenged evidence was not relevant to the trial on defendant's alleged violations of sections 132 and 134, and that any probative value was substantially outweighed by the probability that it would have necessitated an undue consumption of time and confused the issues in the case. Dr. Smith's personal issues cannot support a reasonable inference that all of defendant's patients always were at risk for emergency. And defendant made no offer of proof that any specific patient in the facility on April 3 actually was experiencing an emergency or was at "serious risk" of an emergency due to Dr. Smith's alleged substance abuse issues. The trial court properly excluded the evidence under Evidence Code sections 210 and 352.

B.     *The other challenged evidentiary rulings were harmless*

In addition to the exclusion of evidence relating to Dr. Smith's alleged substance abuse, defendant argues that the trial court erred by (1) admitting the office manager's testimony that the April 16, 2013, letter was false; (2) admitting the CHP officer's testimony that a clinic employee told him there was no emergency; and (3) excluding Dr. Foster's testimony that defendant was entitled to his own opinion whether something is a medical emergency. The People do not defend the court's rulings, but argue that any error was harmless. We agree.

1.     Standard of review

Defendant argues that the trial court's evidentiary rulings, individually and cumulatively, precluded defendant from presenting a defense, and therefore must be

reviewed under the *Chapman*[7] standard, which requires reversal unless the error is harmless beyond a reasonable doubt. (*People v. Jackson* (2014) 58 Cal.4th 724, 792.)

" ' "As a general matter, the '[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense.' [Citations.] Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense." ' [Citation.]" (*People v. Thornton* (2007) 41 Cal.4th 391, 443.) Routine application of evidentiary laws does not implicate a defendant's constitutional rights. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1010.)

The evidentiary rulings challenged here were routine in nature. Whether considered individually or cumulatively, they did not rise to the level of a constitutional deprivation of defendant's right to present a defense. Accordingly, we conclude that the proper standard of review is that announced in *Watson,*[8] not the stricter standard reserved for errors of constitutional dimension set forth in *Chapman*. (See *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.) Under *Watson*, error is not reversible unless it is reasonably probable a result more favorable to the appellant would have been reached had the error not occurred. (*Watson*, *supra*, 46 Cal.2d at pp. 836-837.)

2.     The office manager's testimony

During trial, the prosecutor asked the clinic's office manager for her opinion as to whether the content of the April 16, 2013, letter was true. Defendant's counsel objected that this was improper lay opinion, but the trial court overruled the objection. On appeal, defendant argues that the trial court erred in overruling the objection.

---

[7] *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705].

[8] *People v. Watson* (1956) 46 Cal.2d 818.

The People do not defend the merits of the ruling, but argue that any error in allowing the office manager to give her opinion was harmless error. We agree. Here, it is not reasonably probable that a result more favorable to defendant would have been reached had the office manager not been allowed to opine that the content of the April 16, 2013, letter was false.

There was overwhelming evidence that the content of the letter—that defendant was on his way to an emergency—was false. That evidence includes the undisputed testimony of the medical assistant supervisor, the office manager, and Dr. Foster that there was no emergency in the clinic on the morning of April 3. The lack of an emergency also is supported by evidence that defendant was late for a regularly scheduled patient appointment on the morning of April 3; that defendant falsely told the officer that he needed to be at the hospital within 10 minutes for gallbladder surgery; that defendant induced the office manager to sign the letter under false pretenses; and that defendant was involved in a similar prior traffic stop for speeding in which his claimed emergency also could not be substantiated. Moreover, the office manager testified that defendant misled her into signing the letter. Considering the totality of the evidence, we conclude that any error in admitting the office manager's lay opinion about the falsity of the letter was harmless error.

### 3. The officer's hearsay testimony

During trial, the prosecutor asked the CHP officer about his April 3 conversation with the clinic's medical assistant supervisor. The officer testified that the supervisor told him there was no emergency at the facility. Defense counsel objected that this was hearsay, but the court overruled the objection, relying on the contemporaneous statement exception to the hearsay rule. Defendant asserts this ruling was erroneous. The People concede the error, but argue it was harmless. Again, we agree.

Even if the statement had been excluded, it would not have changed the evidence before the jury because the supervisor herself testified (without objection) that she told

17

the officer there was no emergency.  In addition, defendant's counsel elicited the same testimony during his cross-examination of the officer.  The supervisor's hearsay statement was cumulative evidence.  In addition, as described above, the evidence was overwhelming that there was no emergency at the clinic at the time of the traffic stop.  The error was harmless.

### 4.  Dr. Foster's opinion

The final evidentiary ruling challenged by defendant is the trial court's exclusion of Dr. Foster's testimony that defendant is entitled to his opinion whether there was an emergency.  During cross-examination, Dr. Foster testified that concern for a possible gallbladder infection could be an emergency, but developing such concern would require "some contact" with the patient, a "history," or "some element of examination."  The following colloquy ensued:

"[Defense Counsel:]  Last question.  [¶]  As you know it, on April 3rd [defendant] saw – did attend to patients?

"[Dr. Foster:]  Yes.

"[Defense Counsel:]  And you don't know the history of those patients?

"[Dr. Foster:]  That's correct.

"[Defense Counsel:]  Therefore, if [defendant] opined that it was an emergency, without labeling it minor or major, but an emergency, then isn't he entitled to that opinion?

"[Dr. Foster:]  Yes, he is.

"[Prosecutor:]  Objection.  Calls for a legal conclusion in this proceeding.

"[The Court:]  Sustained."

Defendant argues that the trial court erred in excluding this testimony.  The People argue that even if the trial court erred, the error was harmless.  Once again, we agree with the People.

First, the testimony has minimal relevance. At most, it supports the notion that defendant *could have formed an opinion* that a patient was at risk of emergency *after* attending to his patients on April 3. Defendant did not offer any evidence that a patient contacted him prior to the traffic stop to convey symptoms indicating gall bladder surgery was immediately needed.

Second, the evidence was unnecessary because it was cumulative to other evidence presented to the jury. Dr. Foster was permitted to testify, without objection, that every licensed doctor, including defendant, is "entitled . . . to render an opinion" as to whether something constitutes a medical emergency. Dr. Foster expressly opined that defendant was "able to make that determination as a doctor on April 3rd."

Finally, as discussed above, there was overwhelming evidence that there was no emergency at the clinic on the morning of April 3, 2013. It was not reasonably probable that the verdict would have been more favorable to the defense had the trial court admitted the evidence.

Even if the trial court's evidentiary rulings were wrong, they were harmless errors and they did not, individually or cumulatively, violate defendant's right to due process.

## DISPOSITION

The judgment is affirmed.

                                                                KRAUSE          , J.

We concur:

      MAURO          , Acting P. J.

      HOCH          , J.

CERTIFIED FOR PARTIAL PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C085988 |
| Plaintiff and Respondent, | (Super. Ct. No. CM040382) |
| v. | ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| NICKESH PRAVIN SHAH, | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on July 22, 2019, was not certified for publication in the Official Reports. For good cause now it appears that the opinion, with the exception of parts II through IV, should be published in the Official Reports and it is so ordered.

1

# EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Butte County, Clare Keithley, Judge.  Affirmed.

Eric S. Multhaup for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.


BY THE COURT:


      MAURO      , Acting P. J.


      HOCH      , J.


      KRAUSE      , J.