Filed 1/27/16  P. v. Young CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B259403 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA057387) |
| v. | |
| GEORGIA BARATTA YOUNG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Daviann L. Mitchell, Judge.  Affirmed as modified.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Georgia Baratta Young (defendant) appeals from the judgment entered after she was convicted of accessory to grand theft and other felonies. She contends that the concurrent sentence imposed as to count 3 should have been stayed, and that she is entitled to an additional day of custody credit. Although respondent agrees with both contentions, we find merit only in defendant's claim for additional custody credit. We thus modify the award to add the additional day, and as so modified, we affirm the judgment.

## BACKGROUND

In a five-count information, defendant was charged in count 1 with a violation of Penal Code section 32,[1] accessory to grand theft, committed by Don Cole (Cole) in violation of section 487. Defendant was charged in count 2 with preparing false documentary evidence, in violation of section 134, and in count 3 she was charged with offering false evidence, in violation of section 132. In count 4, defendant was charged with delivering a threatening letter with the intent to extort money or property, in violation of section 523, and in count 5, she was charged with attempted extortion, in violation of section 524.

A jury found defendant guilty of counts 1, 2, 3, and 5 as charged in the information. The jury was deadlocked as to count 4, and the trial court declared a mistrial and dismissed it. On September 12, 2014, defendant declined probation, and the court sentenced her to county jail for a total term of two years eight months, comprised of the middle term of two years as to count 1, the middle term of two years as to count 2, stayed pursuant to section 654, a concurrent middle term of two years as to count 3, and eight months, one-third the middle term of two years as to count 5, to run consecutively. Defendant was ordered to pay a restitution fine and was awarded a total of 228 days of presentence custody credit, which included 114 actual days and 114 days of custody credit. Defendant filed a timely notice of appeal from the judgment.

---

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.

**Trial evidence relevant to counts 1, 2, and 3[2]**

When a rancher reported to the Los Angeles County Sheriff's Department that over a three-week period, someone had stolen approximately 8,000 feet of barbed wire fencing used to keep his cattle contained on his property, Detective Jeffrey Williams was assigned to investigate. One day the rancher saw 25 to 30 fence posts in the bed of a truck, noted the license plate number of the truck, and later identified the driver from a photographic lineup as Cole. After Detective Williams determined that Cole owned the truck, he went to Cole's home on March 17, 2011, to speak to him. Detective Williams told Cole that on March 12, a witness saw the stolen property in Cole's truck in the area from where it was stolen, and had identified Cole and his truck. Cole denied stealing any fence posts and claimed he had been on the victim's property panning gold. Detective Williams told Cole that he would contact him the following week and would probably arrest him.

Cole told defendant that he had been accused of stealing 25 to 30 steel fence posts, and that he told the detective that instead he picked up some metal from defendant's apartment. Cole also told defendant that he was on probation for theft of metal. Defendant offered to help and gave Cole a handwritten letter which read as follows:

> "On or about March 12, 2011, I gave Don Cole approximately 25 to 30 steel fence posts to take to recycle. I obtained the posts from an elderly friend whom I assisted in re-landscaping her yard and had her permission to remove the posts. I intended to throw them away, however, Mr. Cole informed me that they could be recycled, so I gave him the posts. If you have any questions, you may reach me at (661) 361-9402. Sincerely, Georgia Young."

On March 24, 2011, when Detective Williams returned to arrest Cole, Cole gave him the letter. Cole explained to Detective Williams that he had picked up the posts from defendant's apartment on Spearman Avenue; they were lying at the side of the house and

---

**2**     As defendant does not challenge her conviction of count 5, we do not summarize the evidence supporting it. Defendant did not testify or present witnesses.

3

defendant helped him load them into his truck. At the time of Cole's arrest equipment used to cut the posts was found in his garage.

The same day Detective Williams telephoned defendant at the number in the letter. Defendant said she gave Cole the note because he had told her he was potentially in trouble for having the fence posts, and she did not want him to get into trouble. She claimed that the posts had been on the property of Opal Barnes, a friend of hers who lived near 50th Street West and Avenue M in Quartz Hill. When asked for the address, defendant replied that Ms. Barnes was senile and would not be able to remember anything about the fence posts, so she would be of no help to the detective.

Later, Detective Williams reviewed the recordings of the telephone conversations Cole had while in custody. In one conversation with his wife, Cole said that he had to "get with" defendant because the detective told him defendant said that he picked the posts up from somewhere in Quartz Hill, rather than as they had agreed, and that he got them from her apartment.

On March 27, 2011, after hearing that conversation, Detective Williams and his partner Detective Parisi went to defendant's home with a hidden recording device, and spoke with her. The recording of the interview was played for the jury. Detective Williams began by telling defendant about Cole's telephone conversation with his wife and informing defendant that he knew she had not given Cole the 25 posts. Defendant replied that she had given him "a bunch of stuff," including some spray cans, a bleach container, and other things that Opal Barnes had allowed to pile up. She said that there was no barbed wire with the posts, although they had hooks that barbed wire could be attached to. Defendant claimed that she was afraid that giving Cole posts may have given him the idea of stealing posts from other people. When Detective Williams asked where Opal Barnes lived, defendant replied that she lived near 55th and Avenue M.

In response to questions about the circumstances regarding the letter, defendant explained that Cole came to see her after the detective had first talked to him. Cole told defendant that someone had his license plate number and he was in trouble for "yanking somebody's fence posts up"; and he admitted to defendant that he had recycled the posts.

4

Defendant told Detective Williams that she volunteered to write the letter because she had given Cole some other posts and did not want him to be arrested like the time he took some pipes he had found. Many times during the interview Detective Williams urged defendant to tell the truth, and informed her that covering up a felony was also a felony. Defendant stood by her story that she had given posts to defendant, but suggested they were different posts.

Cole later admitted to taking the posts from the owner's property, although he denied cutting them. He claimed that he found them abandoned in the desert. Cole said he did get metal from defendant's house, but not the posts. He was convicted of the theft following a plea of no contest.

Detective Williams made an unsuccessful effort to find Opal Barnes, though defendant never provided him with an address.

## DISCUSSION

### I. Section 654

Defendant contends the trial court erred in imposing a concurrent sentence on count 3, and should have instead stayed the sentence pursuant to section 654.

Subdivision (a) of section 654 provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 applies where one physical act gives rise to more than one criminal offense. (*People v. Jones* (2012) 54 Cal.4th 350, 358.) Section 654 also prohibits punishment for two crimes arising from an indivisible course of conduct if all of the offenses were incident to one objective. (*Neal v. State of California* (1960) 55 Cal.2d 11, 18, disapproved on other grounds by *People v. Correa* (2012) 54 Cal.4th 331, 334, 336.) However, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]" (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.)

Defendant argues that the acts constituting a violation of counts 2 and 3 were committed during a single indivisible course of conduct and undertaken with the single

5

objective of helping Cole to avoid being convicted for the crime he had committed. Respondent agrees with defendant and further contends that a single act gave rise to all three counts. We disagree and reject the contentions of both parties.

The sentencing transcript reflects that after imposing sentence as to count 1, the trial court impliedly found the course of conduct alleged in counts 1 and 2 to have been indivisible, but not so with counts 2 and 3. The court stated: "[A]s to count 2 . . . the defendant will be sentenced to two years and that will be stayed pursuant to [section] 654 of the Penal Code. As to count 3 the defendant will be sentenced to two years and that will be concurrent with a principle [*sic*] term and based on the fact and circumstances while there was separation and time of the court does find that is part and parcel to one course of conduct." Although the court's findings could have been more clearly stated, it is apparent that the court imposed a sentence rather than a section 654 stay, due to multiple acts, divisible in time, committed by defendant. (*People v. Beamon, supra*, 8 Cal.3d at p. 639, fn. 11.) "Under section 654, a course of conduct divisible in time, though directed to one objective, may give rise to multiple convictions and multiple punishment 'where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.' [Citation.]" (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717-718.)

"Because of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an 'act or omission,' there can be no universal construction which directs the proper application of section 654 in every instance. [Citation.]" (*People v. Beamon, supra*, 8 Cal.3d at pp. 636-637.) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence. [Citation.]" (*People v. Brents* (2012) 53 Cal.4th 599, 618.) As the trial court is vested with broad latitude in making its determination, we review the evidence in the light most favorable to the trial court's determination. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

6

First we reject respondent's contention that a single act was committed. Count 2 alleged a violation of section 134, which prohibits "preparing any false . . . paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law." Count 3 alleged a violation of section 132, which provides that any "person who upon any . . . investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or antedated, is guilty of felony." The two provisions describe different crimes, committed by different acts. (*In re Horowitz* (1949) 33 Cal.2d 534, 541-545.) Defendant violated section 134 when she prepared the letter with the intent that Cole produce it for a fraudulent or deceitful purpose in any inquiry authorized by law, as there was no requirement that the letter ultimately be produced. (See *People v. Morrison* (2011) 191 Cal.App.4th 1551, 1556.) Section 132 on the other hand, was violated when the letter was produced for that fraudulent purpose: by Cole when he gave the letter to Detective Williams; and by defendant when she represented to the detectives that the letter was genuine or true. (See *Horowitz, supra*, at pp. 544-545.)

Next, we reject defendant's contention that the crimes were part of an *indivisible* course of conduct. Defendant contends that section 132 was violated at the moment she handed the letter to Cole, and concludes that the preparation and handing over to Cole were thus part of an indivisible course of conduct that cannot be punished separately. However, as we read the prosecutor's argument, the People's theory at trial was that the acts amounting to count 2 were preparing the letter with the intent that Cole use it fraudulently, and that the acts amounting to count 3 consisted of defendant's falsely authenticating the letter in conversations with detectives. The prosecutor expressly referred the jury to CALCRIM No. 1905, the court's instruction with regard to section 132. As relevant to defendant's argument, that instruction read: "A person passes or offers to use or attempts to pass or offer to use a document if he or she represents to someone that the document is genuine. The representation may be by words or conduct

7

and may be either direct or indirect." There was no evidence presented at trial that defendant represented *to Cole* that the letter was genuine. Thus, the prosecutor made clear that count 3 alleged acts different from those alleged in count 2.

The trial court's determination that the acts in count 3 were divisible in time is supported by substantial evidence. Defendant wrote the exculpatory letter and gave it to Cole on or about March 17, 2011. One week later, on March 24, she told Detective Williams by telephone that she gave Cole the letter because she had given him posts given to her by a friend in Quartz Hill. Three days later, on March 27, 2011, in a recorded conversation with Detectives Williams and Parisi, defendant again confirmed the statements in her letter. Defendant had ample opportunity to reflect and renew her intent to assist Cole in avoiding arrest and prosecution after preparing the letter. As substantial evidence supports the finding that defendant's course of conduct, although undertaken for the same objective, was not indivisible, the trial court did not err in imposing concurrent punishment as to count 3.

## II. Custody credit

Defendant contends that she is entitled to an additional day of presentence custody credit, and respondent agrees. The probation report shows that defendant was arrested on May 21, 2014. She was sentenced September 12, 2014. Both the date of arrest and the date of sentencing must be counted in the credit calculation. (*People v. Morgain* (2009) 177 Cal.App.4th 454, 469.) As so calculated, defendant's actual time in custody was 115 days, not the 114 days awarded by the trial court. The appropriate remedy is for this court to correct the judgment and order the trial court to issue an amended abstract of judgment. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

### DISPOSITION

The judgment is modified to award one additional actual day of presentence credit, for a total of 229 days of combined credit, which includes 115 actual days of credit and 114 days of conduct credit. The judgment is affirmed as modified. The trial court is directed to prepare an amended abstract of judgment reflecting the corrected presentence

8

custody credit, and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT

9