**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40175**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | **2014 Opinion No. 35S** |
| | ) | |
| Plaintiff-Appellant, | ) | **Filed: May 12, 2014** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| PHILIP MILTON RUGGIERO, | ) | **SUBSTITUTE OPINION** |
| | ) | **THE COURT'S PRIOR** |
| Defendant-Respondent. | ) | **OPINION DATED APRIL 28,** |
| | ) | **2014 IS HEREBY WITHDRAWN** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Order dismissing information charging three counts of preparing false evidence, <u>reversed</u>.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for appellant. Jessica M. Lorello argued.

Nevin, Benjamin, McKay & Bartlett LLP; Robyn Fyffe, Boise, for respondent. Robyn Fyffe argued.

_____

LANSING, Judge

The State appeals from the district court's order dismissing the information charging Philip Milton Ruggiero with three counts of preparing false evidence. For the reasons set forth below, we reverse.

**I.**

**FACTS AND PROCEDURE**

Ruggiero was charged with misdemeanor stalking. While that case was pending, three letters were sent to the magistrate assigned to the case. The letters purported to be from the alleged stalking victim and two other persons indicating they had knowledge of relevant facts concerning the stalking charge. All three letters supported the proposition that Ruggiero was not guilty of the charge. The letters were forwarded to the Boise City prosecutor handling the stalking case, who contacted the alleged victim to inquire whether she had written a letter. The

1

alleged victim said she had not and signed an affidavit to that fact. A detective interrogated Ruggiero as to whether he had written the letters, which Ruggiero denied. Nevertheless, Ruggiero was charged by information with three counts of preparing false evidence in violation of Idaho Code § 18-2602. Following a hearing, a magistrate found probable cause to bind Ruggiero over to district court on the three charges.

Ruggiero filed a motion to dismiss, arguing there was not substantial evidence presented at the preliminary hearing that he committed the crimes alleged. He also argued that section 18-2602 infringes upon speech protected by the First Amendment, as interpreted by the Supreme Court in *United States v. Alvarez*, 567 U.S. ___, 132 S. Ct. 2537 (2012), and argued section 18-2602 is void for vagueness. After a hearing, the district court granted the motion to dismiss, relying on *Alvarez* to find that the statute violated Ruggiero's First Amendment rights. The State now appeals.

## II.

## ANALYSIS

### A.  First Amendment

The State contends the district court erred by determining that section 18-2602 unconstitutionally infringed on Ruggiero's First Amendment rights. Where an issue presented involves the constitutionality of a statute, we review the district court's determination de novo. *State v. Bonner*, 138 Idaho 254, 256, 61 P.3d 611, 613 (Ct. App. 2002); *State v. Richards*, 127 Idaho 31, 34, 896 P.2d 357, 360 (Ct. App. 1995).

Section 18-2602 provides:

> **Preparing false evidence. --** Every person guilty of preparing any false or antedated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced, for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding or inquiry whatever, authorized by law, is guilty of felony.

In granting Ruggiero's motion to dismiss, the district court noted that a magistrate is not ethically permitted to receive or review ex parte communication; therefore, the district court reasoned that, as applied in the instance at hand, section 18-2602 was being used to punish a false statement that could not be used in evidence and could not be used to gain any material advantage. The district court determined that section 18-2602, "in the context of criminalizing a false or forged letter sent to a judge who is not ethically permitted to consider the *ex parte*

2

communication for any reason punishes falsity alone" and was therefore unconstitutional. In coming to this conclusion, the court relied heavily on the United States Supreme Court's decision in *Alvarez*, 567 U.S. ___, 132 S. Ct. 2537, which invalidated, under the First Amendment, a federal statute criminalizing the making of false statements that one has received certain military awards.

As a general matter, the First Amendment means that government has no power to restrict expression because of its message, ideas, subject matter, or content. *Id*. at ___, 132 S. Ct. at 2543; *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002). As a result, the Constitution demands that content-based restrictions on speech be presumed invalid and that the government bear the burden of showing their constitutionality. *Alvarez*, 567 U.S. at ___, 132 S. Ct. at 2543-44. The Supreme Court has repeatedly recognized, however, that certain categories of speech do not enjoy the benefit of full First Amendment protection. *See id.* at ___, 132 S. Ct. at 2544; *United States v. Stevens*, 559 U.S. 460, 468-69 (2010).

At issue in *Alvarez* was the constitutionality of the Stolen Valor Act of 2005, 18 U.S.C. § 704(b) (2012),[1] which provided, in relevant part:

> (b)      FALSE CLAIMS ABOUT RECEIPT OF MILITARY DECORATIONS OR MEDALS. -- Whoever falsely represents himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States . . . shall be fined under this title, imprisoned not more than six months, or both.

*Alvarez*, 567 U.S. at ___, 132 S. Ct. at 2543. Alvarez challenged the constitutionality of the statute after the federal government filed charges against him for falsely telling fellow district water board members, at a public meeting, that he had been awarded a Congressional Medal of Honor.

The Supreme Court struck down the Stolen Valor Act in a six-to-three decision, although no opinion garnered a majority of the Court. Writing for the four-justice plurality,[2] Justice Kennedy began by articulating the general rule that "content-based restrictions on speech have

---

[1]      The Stolen Valor Act was amended in 2013 to comport with the Supreme Court's holding in *United States v. Alvarez*, 567 U.S. ___, 132 S. Ct. 2537 (2012).

[2]      Two concurring justices provided the requisite votes to overturn the Stolen Valor Act, but rejected the plurality's "strict categorical analysis" to reach this result. *Alvarez*, 567 U.S. at ___, 132 S. Ct. at 2551. Instead, the concurrence stated intermediate scrutiny should apply. *Id*. at ___, 132 S. Ct. at 2551-52.

been permitted, as a general matter, only when confined to the few 'historic and traditional categories [of expression] long familiar to the bar.'" *Id*. at ___, 132 S. Ct. at 2544 (quoting *Stevens*, 559 U.S. at 468).[3] The plurality listed the following such categories: incitement, obscenity, defamation, speech integral to criminal conduct, fighting words, child pornography, fraud, true threats, and speech presenting grave and imminent danger. *Id*. Noticeably absent from this list, the plurality noted, is a general exception to the First Amendment for false statements. *Id*. The plurality surmised that this absence "comports with the common understanding that some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." *Id*.

In response to the government's argument that Supreme Court precedent has excluded false statements from First Amendment protections, the Supreme Court distinguished the examples cited:

> These quotations all derive from cases discussing defamation, fraud, or some other legally cognizable harm associated with a false statement, such as an invasion of privacy or the costs of vexatious litigation. In those decisions the falsity of the speech at issue was not irrelevant to our analysis, but neither was it determinative. The Court has never endorsed the categorical rule the Government advances: that false statements receive no First Amendment protection. Our prior decisions have not confronted a measure, like the Stolen Valor Act, that targets falsity and nothing more.

*Id*. at ___, 132 S. Ct. at 2545 (citations omitted). In this context, the plurality also addressed three examples (raised by the government) of regulations of false speech that courts have generally found permissible: the federal criminal prohibition of a false statement made to a government official, federal and state laws punishing perjury, and federal prohibitions of the false representation that one is speaking as a government official or on behalf of the government. However, the plurality reasoned that these restrictions "do not establish a principle that all proscriptions of false statements are exempt from exacting First Amendment scrutiny." *Id*. at

---

[3]     *United States v. Stevens*, 559 U.S. 460 (2010), is a landmark First Amendment case, in which the Supreme Court rejected a balancing test (the value of the speech in question against its societal cost) to determine when a category of speech should be excluded from constitutional protection in favor of emphasizing narrow classes of speech that were historically unprotected. Having set forth this analytical framework, the Court struck down a federal law criminalizing commercial creation, sale, or possession of depictions of animal cruelty after finding no historical First Amendment restrictions existed for depictions of animal cruelty.

___, 132 S. Ct. at 2546. Rather, the plurality found each of these offenses were distinguishable from the criminalization of pure speech. In regard to the federal statute prohibiting false statements to government officials, which punishes "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government . . . makes any materially false, fictitious, or fraudulent statement or representation," 18 U.S.C. § 1001, the plurality noted the statute's prohibition of false statements "made to Government officials, in communications concerning official matters, does not lead to the broader proposition that false statements are unprotected when made to *any person at any time*." *Alvarez*, 567 U.S. at ___, 132 S. Ct. at 2546 (emphasis added). The plurality noted the same point could be made as to what the Supreme Court has repeatedly confirmed is the unquestioned constitutionality of both federal and state perjury statutes, reasoning:

> It is not simply because perjured statements are false that they lack First Amendment protection. Perjured testimony "is at war with justice" because it can cause a court to render a "judgment not resting on truth." *In re Michael*, 326 U.S. 224, 227 (1945). Perjury undermines the function and province of the law and threatens the integrity of judgments that are the basis of the legal system. *See United States v. Dunnigan*, 507 U.S. 87, 97 (1993) ("To uphold the integrity of our trial system . . . the constitutionality of perjury statutes is unquestioned"). Unlike speech in other contexts, testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official government action, action that often affects the rights and liberties of others. Sworn testimony is quite distinct from lies not spoken under oath and simply intended to puff up oneself.

*Alvarez*, 567 U.S. at ___, 132 S. Ct. at 2546.

Finally, the plurality distinguished statutes prohibiting false representation that one is speaking on behalf of the government or prohibiting impersonating a government officer in that they "also protect the integrity of Government processes, quite apart from merely restricting false speech." *Id*. To the extent such statutes "implicate fraud or speech integral to criminal conduct," the plurality reasoned, they were inapplicable to the issue at hand. The plurality summarized:

> As our law and tradition show, then, there are instances in which the falsity of speech bears upon whether it is protected. Some false speech may be prohibited even if analogous true speech could not be. This opinion does not imply that any of these targeted prohibitions are somehow vulnerable. But it also rejects the notion that false speech should be in a general category that is presumptively unprotected.

*Id*. at ___, 132 S. Ct. at 2546-47.

Having established that the Court would not create a new category of unprotected speech in regard to false statements, the plurality turned to the constitutionality of the Stolen Valor Act as a content-based speech prohibition. Noting that "[t]he Act by its plain terms applies to a false statement made at any time, in any place, to any person," the plurality surmised that the "sweeping, quite unprecedented reach of the statute puts it in conflict with the First Amendment." *Id.* at ___, 132 S. Ct. at 2547. The plurality continued:

> Here the lie was made in a public meeting, but the statute would apply with equal force to personal, whispered conversations within a home. The statute seeks to control and suppress all false statements on this one subject in almost limitless times and settings. And it does so entirely without regard to whether the lie was made for the purpose of material gain. . . .
>
> Permitting the government to decree this speech to be a criminal offense, whether shouted from the rooftops or made in a barely audible whisper, would endorse government authority to compile a list of subjects about which false statements are punishable. That governmental power has no clear limiting principle. Our constitutional tradition stands against the idea that we need Oceania's Ministry of Truth. *See* G. ORWELL, NINETEEN EIGHTY-FOUR (1949) (Centennial ed. 2003). Were this law to be sustained, there could be an endless list of subjects the National Government or the States could single out. Where false claims are made to effect a fraud or secure moneys or other valuable considerations, say offers of employment, it is well established that the Government may restrict speech without affronting the First Amendment. *See, e.g., Virginia Bd. of Pharmacy [v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976)] (noting that fraudulent speech generally falls outside the protections of the First Amendment). But the Stolen Valor Act is not so limited in its reach. Were the Court to hold that the interest in truthful discourse alone is sufficient to sustain a ban on speech, absent any evidence that the speech was used to gain a material advantage, it would give government a broad censorial power unprecedented in the Court's cases or in our constitutional tradition.

*Alvarez*, 567 U.S. at ___, 132 S. Ct. at 2547-48.

Having found, based on the preceding discussion, that the Act "conflicts with free speech principles," the plurality then proceeded to apply "exacting scrutiny" to the Stolen Valor Act, determining it could not survive.[4] *Id.* at ___, 132 S. Ct. at 2548. Although recognizing that the government had compelling interests in protecting the integrity of the Congressional Medal of Honor, the plurality determined the government had not shown its chosen restriction on speech

---

[4] As a preface to applying "exacting scrutiny" after already having found the Act to be in conflict with First Amendment principles, the plurality noted that "even when examined within its own narrow sphere of operation, the Act cannot survive." *Alvarez*, 567 U.S. at ___, 132 S. Ct. at 2548.

was "'actually necessary'" to achieve its interest or that the restriction was "'the least restrictive means among available, effective alternatives.'" *Id.* at ___, ___, 132 S. Ct. at 2549, 2551 (citations omitted).

We are unconvinced that the Supreme Court's decision in *Alvarez*, striking down the Stolen Valor Act, dictates that section 18-2602 is unconstitutional. Unlike the Stolen Valor Act, section 18-2602 does not target "falsity alone," nor does it prohibit speech on "one subject in almost limitless times and settings." *Alvarez*, 567 U.S. at ___, ___, 132 S. Ct. at 2545, 2547. Rather, as the State points out, the statute's reach is limited to a specific setting ("any trial, proceeding or inquiry whatever") where a false statement is offered for a particular purpose ("with intent to produce it, or allow it to be produced, for any fraudulent or deceitful purpose"). *See* I.C. § 18-2602. Thus, it is much more akin to the categories of false speech that the plurality reaffirmed the government could criminalize without running afoul of the First Amendment: false statements to federal officials, perjury, and impersonating government officials. *Alvarez*, 567 U.S. at ____, 132 S. Ct. at 2545-46. As discussed above, the plurality took pains to distinguish these permissible crimes from that created under the Stolen Valor Act, noting both the potential cognizable harm of each, which set them apart from statutes "merely restricting false speech," *id.* at ___, 132 S. Ct. at 2546, as well as the more limited scope of those statutes as compared to the Stolen Valor Act. As to the latter consideration, the plurality distinguished the federal statute prohibiting false statements to government officials, noting that, unlike the Stolen Valor Act, the statute's "prohibition on false statements made to Government officials, in communications concerning official matters, does not lead to the broader proposition that false statements are unprotected when made to any person, at any time, in any context." *Id.* (citing 18 U.S.C. § 1001). As we noted above, section 18-2602 contains analogous limitations that prevent the statute from criminalizing false statements in limitless contexts.

As to the former consideration, the potential cognizable harm attendant to the preparation of false evidence with the intent that it be produced for a fraudulent or deceitful purpose in a court proceeding could certainly be considered as serious as the harm attendant to falsely representing that one is speaking on behalf of the government and perjury, both recognized by

the *Alvarez* plurality as unprotected speech.[5] That the magistrate in this case was barred by judicial canons from actually reading the letters is immaterial to the analysis of the constitutionality of the statute. As the State points out, the statute bars preparing and submitting such false statement with the *intent* it be considered--not that such false statement be actually admitted into evidence. That the magistrate did not read the letters in this case does not, as Ruggiero seems to assert, eliminate all potential harm accompanying his submission of the letters. For example, the letters were forwarded to the handling prosecutor, who was forced to expend resources determining their authenticity. *Alvarez* simply does not stand for the proposition that the First Amendment categorically protects unsuccessful attempts to undermine the judicial process by the assertion of false statements. Accordingly, the district court erred by determining section 18-2602 is unconstitutional under the First Amendment and by dismissing the charges on this basis.

**B.      Substantial Evidence at the Preliminary Hearing**

Ruggiero contends that even if this Court finds that the district court erred by dismissing the charges on First Amendment grounds, we should nonetheless affirm the dismissal because the State presented insufficient evidence at the preliminary hearing for the magistrate to find probable cause that he violated section 18-2602. *See State v. Wagner*, 149 Idaho 268, 270, 233 P.3d 199, 201 (Ct. App. 2010) ("An appellate court may affirm a lower court's decision on a legal theory different from the one applied by that court."). Under Idaho law, a person charged with a felony has the right to a preliminary hearing at which the magistrate court must determine whether there is probable cause to believe the charged offense was committed and that the defendant committed it. I.C. § 19-804; Idaho Criminal Rule 5.1. Depending upon the magistrate court's determination, a defendant will either be bound over to the district court to answer to the charge or the charge will be dismissed. I.C. §§ 19-814, 19-815; I.C.R. 5.1. A defendant may challenge a magistrate court's finding of probable cause at the preliminary hearing by filing a motion in the district court to dismiss the charge. I.C. § 19-815A. The probable cause standard at a preliminary hearing does not require the State to prove the defendant guilty beyond a

---

[5]      Specifically, the *Alvarez* plurality noted that prohibition of falsely representing that one is speaking on behalf of the government protects "the integrity of Government processes, quite apart from merely restricting false speech." *Alvarez*, 567 U.S. at ___, 132 S. Ct. at 2546. As to perjury, the court noted that it "undermines the function and province of the law and threatens the integrity of judgments that are the basis of the legal system." *Id*.

reasonable doubt. *State v. Phelps*, 131 Idaho 249, 251, 953 P.2d 999, 1001 (Ct. App. 1998). A magistrate's commitment will not be deemed an abuse of discretion, if under any reasonable view of the evidence, including permissible inferences, it appears likely that an offense occurred and that the accused committed it. *Id.* A finding of probable cause must be based upon substantial evidence as to every material element of the offense charged. I.C.R. 5.1(b); *State v. Porter*, 142 Idaho 371, 373, 128 P.3d 908, 910 (2005); *State v. McLellan*, 154 Idaho 77, 78, 294 P.3d 203, 204 (Ct. App. 2013). This requirement may be satisfied through circumstantial evidence and reasonable inferences to be drawn from that evidence by the committing magistrate. *State v. Munhall*, 118 Idaho 602, 606, 798 P.2d 61, 65 (Ct. App. 1990). A reviewing court will not substitute its judgment for that of the magistrate as to the weight of the evidence. *Id.* We will overturn a magistrate's finding of probable cause to believe a defendant has committed an offense only upon a showing that the magistrate abused its discretion. *State v. Reyes*, 139 Idaho 502, 504, 80 P.3d 1103, 1105 (Ct. App. 2003).

Ruggiero argues the magistrate erred by finding probable cause because the magistrate did not properly interpret the phrase in the statute that the perpetrator must have intended that the false evidence be "produced . . . upon any trial, proceeding or inquiry whatever." I.C. § 18-2602. He contends the magistrate erred by concluding this phrase was not limited to circumstances in which the accused intends to produce the item during a proceeding such as a trial or hearing, but rather finding it was sufficient that Ruggiero sent the item to the handling judge with the intent to "produce it somewhere in the trial proceeding or inquiry and have somebody rely on it." This was in error, Ruggiero argues, because the phrase in the statute refers to an "actual proceeding--whether a trial, motion hearing or an administrative hearing--and does not extend to any correspondence simply because it was sent to the handling judge while a case is pending." Ruggiero further contends there was not substantial evidence in the record that he intended the correspondence to be produced and relied upon in open court.

Ruggiero's arguments are unavailing. As noted above, probable cause may be satisfied through reasonable inferences to be drawn from that evidence by the committing magistrate. *Munhall*, 118 Idaho at 606, 798 P.2d at 65. It is a reasonable inference from the fact that Ruggiero sent letters, which purported to contain relevant facts concerning his culpability, to the presiding magistrate of his *pending* criminal case, that Ruggiero intended the evidence, or at least the facts therein, be considered in an "actual proceeding" pertaining to his criminal case.

Certainly, the assertions contained in the letters that Ruggiero was innocent would be of no use to him unless they were actually considered. That Ruggiero's attempt at doing so was somewhat clumsy and ultimately ineffective does not negate any intent he had in actually producing and sending the letters. As we indicated above, a probable cause determination will be upheld if, under any reasonable view of the evidence, including permissible inferences, it appears likely that an offense occurred and that the accused committed it. *Phelps*, 131 Idaho at 251, 953 P.2d at 1001. That standard was clearly met here. The magistrate did not err by finding there was probable cause to believe that Ruggiero committed the three charges of preparing false evidence.

## C. Vagueness

As an alternative basis for dismissal of his charges, Ruggiero argues section 18-2602 is void for vagueness. The constitutionality of a statute is a question of law, over which this Court exercises de novo review. *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). An appellate court is obligated to seek an interpretation of a statute that will uphold its constitutionality. *Id*. In addition, "a statute should not be held void for uncertainty if any practical interpretation can be given it." *Id*.

The void-for-vagueness doctrine is premised upon the Due Process Clause of the Fourteenth Amendment to the United States Constitution. This doctrine requires that a statute defining criminal conduct be worded with sufficient clarity and definiteness that ordinary people can understand what conduct is prohibited and that the statute be worded in a manner that does not allow arbitrary and discriminatory enforcement. *State v. Korsen*, 138 Idaho 706, 711, 69 P.3d 126, 131 (2003) *abrogated on other grounds by Evans v. Michigan*, ___ U.S. ___, 133 S. Ct. 1069 (2013). It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Id*. Furthermore, as a matter of due process, no one may be required at the peril of loss of liberty to speculate as to the meaning of penal statutes. *Id*. at 711-12, 69 P.3d at 131-32. The Supreme Court has held that due process requires that all "be informed as to what the State commands or forbids" and that "men of common intelligence" not be forced to guess at the meaning of the criminal law. *Id*. at 712, 69 P.3d at 132; *Cobb*, 132 Idaho at 197, 969 P.2d at 246. A statute may be void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it fails to establish minimal guidelines to govern law enforcement or others who must enforce the statute.

*Korsen*, 138 Idaho at 712, 69 P.3d at 132; *State v. Larsen*, 135 Idaho 754, 756, 24 P.3d 702, 704 (2001).

A statute may be challenged as unconstitutionally vague on its face or as applied to a defendant's conduct. *Korsen*, 138 Idaho at 712, 69 P.3d at 132. For a "'facial vagueness'" challenge to be successful, "'the complainant must demonstrate that the law is impermissibly vague in all of its applications.'" *Id.* (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)). In other words, the challenger must show the enactment is invalid *in toto. Id.* To succeed on an "as applied" vagueness challenge, a complainant must show that the statute, as applied to the defendant's conduct, failed to provide fair notice that the defendant's conduct was proscribed or failed to provide sufficient guidelines such that the police had unbridled discretion in determining whether to arrest him. *Id.* A "facial vagueness" analysis is mutually exclusive from an "as applied" analysis. *Id.*

Ruggiero contends section 18-2602 is void for vagueness as applied in this case because, at the preliminary hearing, the magistrate construed the phrase in "any trial proceeding or inquiry whatever" as including a perpetrator's intent to produce it "somewhere in the case and have someone rely on it." This interpretation, he contends, fails to give notice to people of ordinary intelligence concerning the conduct proscribed by section 18-2602 and fails to establish minimal guidelines to govern law enforcement or others who must enforce the statute.

As the State points out, a magistrate's interpretation of a statute does not render a statute unconstitutionally vague; rather, it is this Court that is charged with determining the validity of a statute. Proceeding from this premise, we are unconvinced that section 18-2602 is unconstitutionally vague as applied to Ruggiero's conduct. The plain language of the statute provided fair notice that it was illegal for Ruggiero to prepare false documents and submit them to the magistrate with the intent they be produced in his criminal proceeding as "genuine or true" for a "fraudulent or deceitful purpose," which, in this case, was apparently to avoid culpability. I.C. § 18-2602. Ruggiero provides no convincing argument that the statute allows for "arbitrary and discriminatory enforcement" in violation of his due process rights. *See Korsen*, 138 Idaho at 711, 69 P.3d at 131. Thus, the statute is not unconstitutionally vague such that Ruggiero's charges must be dismissed.

### III.

### CONCLUSION

The district court erred by determining that section 19-2602 unconstitutionally infringes upon speech protected by the First Amendment. The magistrate did not err by finding probable cause to believe that Ruggiero committed the three charges of preparing false evidence and by determining that the statute is not void for vagueness as applied to Ruggiero's conduct. Accordingly, we reverse the district court's order dismissing the charges.

Judge GRATTON **CONCURS.**

Chief Judge GUTIERREZ sat but did not participate in the Court's decision.