**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50052**

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | **Opinion Filed: April 9, 2024** |
| Plaintiff-Respondent, ) | |
| ) | **Melanie Gagnepain, Clerk** |
| v. ) | |
| ) | |
| TAEVYN LEIGH FUELLER, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for preparing false evidence, <u>affirmed</u>.

Nevin, Benjamin & McKay LLP; Dennis Benjamin, Boise, for appellant. Dennis Benjamin, argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen, argued.

_____

HUSKEY, Judge

Taevyn Leigh Fueller appeals from her judgment of conviction for preparing false evidence, Idaho Code § 18-2602. Fueller makes three arguments on appeal. First, Fueller argues there was insufficient evidence to convict her of preparing false evidence. Second, Fueller contends the district court abused its discretion by denying her motion to disqualify a juror for cause. Third, Fueller asserts the district court erred by sustaining multiple prosecutorial objections during her testimony, which deprived Fueller of her constitutional right to testify. For the reasons discussed below, Fueller's judgment of conviction is affirmed.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

Fueller and her ex-husband are the parents of two children, P.F. and E.F. In July 2020, father filed for divorce when Fueller said she was going to sell her house and move to California.

1

As part of the divorce paperwork, the Court issued an order indicating neither party could take the children out of Idaho for more than seventy-two hours. Despite that order, Fueller moved to California with the children. Ultimately, in October 2020, father filed a motion, which the magistrate court granted, requiring Fueller to return to Idaho with the children. Fueller returned to Idaho with the children. The divorce trial took place in January 2021; the divorce was granted and a child custody order was entered in early March 2021.

Around that time, Fueller became employed at the daycare her children attended. An investigation began on April 23, 2021, after Fueller took one of her daughters to the emergency room, where Fueller told a detective that the daughter said father "put a stick in [daughter's] vagina." Fueller told the detective she was concerned the same sexual abuse could also have happened to her other daughter. As a result of the investigation, the detective submitted one allegation of sexual abuse to the prosecutor's office. Fueller also told the detective that one of her co-workers at the daycare, M.B., allegedly witnessed father pull one of Fueller's daughter's arms at a Walmart store. These two allegations formed the basis for a petition for a protection order. Based on these allegations, Fueller was granted a temporary protection order against father. A hearing on the protection order was set for May 5, 2021. That date was continued until June 8, 2021, and following the hearing, the petition was dismissed for insufficient evidence.

While the sexual abuse investigation was ongoing, the detective received a report of a forgery allegation against Fueller. The report, which was from Fueller's employer, alleged that on June 4, 2021, Fueller forged entries in the daycare's digital record book regarding her children. According to M.B., Fueller asked M.B. multiple times to make an entry in the daycare records regarding the Walmart event. M.B. refused. On June 4, 2021, Fueller asked the daycare owner/manager if Fueller could enter "something that previously happened" and "backdate the incident"; the manager told Fueller she could not. A little less than an hour after that conversation, the daycare manager was notified that Fueller created an entry in the daycare records that read: "I informed the mother that I witnessed [P.F.'s] father pull her arm with a lot of force in Walmart on Easter Sunday and [P.F.] was still complaining it was sore. MB 4/5/21, 10:00 AM."

In addition to the Walmart note, another backdated note appeared in the daycare records that stated, "[P.F.] flipped out when I grabbed a wooden handled mop to clean up a mess, took a bit to get her to calm back down. She was fine after she got calmed down and started playing again with friends. 6/2/21, 2:30 PM." This note was also entered under M.B.'s profile, indicating

2

M.B. authored the note. M.B. testified that she had previously sent Fueller a text message documenting her recollection of the event, but M.B. did not enter the note into the daycare records. After Fueller admitted to entering the Walmart note, she was terminated from the daycare.

The State charged Fueller with one count of preparing false evidence. The case proceeded to a jury trial. The jury found Fueller guilty. The district court entered a judgment of conviction and sentenced Fueller to a unified sentence of three years, with one year determinate, and retained jurisdiction. Fueller timely appealed.

## II.

## STANDARD OF REVIEW

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

"The determination whether a juror can render a fair and impartial verdict is directed to the sound discretion of the trial court and will not be reversed absent a showing of abuse of discretion." *State v. Hauser*, 143 Idaho 603, 609, 150 P.3d, 296, 302 (Ct. App. 2006). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct.

App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

## III.

## ANALYSIS

On appeal, Fueller argues: (1) there was insufficient evidence presented at trial to sustain her conviction; (2) the district court erred by failing to disqualify a juror for cause; and (3) the district court made multiple erroneous evidentiary rulings during Fueller's testimony, which deprived Fueller of her state and federal constitutional rights to testify. The State argues the evidence was sufficient to sustain the conviction, there was no error in failing to disqualify the juror because the juror indicated he could be fair and impartial, Fueller fails to show reversible error in the district court's evidentiary rulings, and her constitutional argument regarding the evidentiary objections is inapplicable to this case.

### A. Sufficiency of the Evidence

Fueller argues there was insufficient evidence to convict her because I.C. § 18-2602 does not apply to documents containing truthful information, even if the document is forged. Fueller specifically argues that based on the language of the statute, the daycare entries in her case cannot be classified as false documents.

Idaho Code § 18-2602 reads:

4

Every person guilty of preparing any false or antedated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced, for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding or inquiry whatever, authorized by law, is guilty of [a] felony.

The evidence adduced at trial indicated Fueller entered two notes in the daycare records system that related to information she received from M.B. Both entries were attributed to M.B. for authorship, and both entries were backdated. Fueller argues that because M.B. allegedly witnessed the Walmart incident, the substantive content of the note was true, so the note could not be considered a false record. In support of her argument, Fueller cites *People v. Bamberg*, 175 Cal. App. 4th 618, 96 Cal. Rptr. 3d 139 (2009).[1] However, *Bamberg* does not support her position. In that case, the defendant introduced two photographs which he claimed were of a specific intersection but in fact, the photographs represented a different intersection. *Id*. at 625, 96 Cal. Rptr. 3d at 144. Bamberg argued that the photographs themselves were not false because they accurately depicted the location where they were taken and that the "matter or thing prepared must *in itself* communicate a falsehood in order to constitute a false matter or thing within the meaning of [the statute]." *Id*. at 626, 96 Cal. Rptr. 3d at 144. The Court rejected that argument, holding:

> The term "false" cannot be considered in isolation but must instead be construed together with the rest of statute. Whether evidence is "false" under section 134 depends upon what it is intended to depict or represent as "genuine or true." In other words, falsity is not an absolute quality. It can turn upon what the evidence is offered to prove.

*Id*. at 627, 96 Cal. Rptr. 3d at 145. The Court also contrasted the photographs with a forged document, noting: "One can infer that a forged or altered legal document was prepared to deceive someone else into believing the document is genuine." *Id*. The Court reasoned:

> Even though appellant did not alter the photographs themselves, he literally "prepared" evidence with the intent to defraud the court in a proceeding authorized by law. He did not simply lie about the content of the photographs while testifying in traffic court. Rather, he prepared the evidence with the intention of defrauding the court into believing the photographs portrayed a location they did not in fact depict.

*Id*. at 628, 96 Cal. Rptr. 3d at 146.

---

[1] The statutory language at issue in *Bamberg* is identical to the language in the Idaho statute. The difference between the structure of the two statutes is that the word "antedated" in the Idaho statute is written "ante-dated" in the California statute, and the Idaho statute has an additional comma.

Here, the jury could reasonably conclude beyond a reasonable doubt that Fueller prepared evidence with the intent to defraud the court in her protection order hearing to believe the notes were legitimate records from her children's daycare, a mandatory reporting agency, regarding allegations of child abuse. It is the forgery of the entry that renders the entry a falsity, especially when coupled with the intent to have the entries perceived as legitimate entries from an entity that has a mandatory obligation to report suspected abuse.

The following evidence was presented at trial: Fueller admitted on cross-examination that on June 4, 2021, she entered the note about the Walmart incident, attributed authorship to M.B., and backdated the entry to April 5, 2021. The incident at Walmart occurred around Easter, but Fueller did not ask M.B. to enter the information until closer in time to her protection order hearing, which was scheduled for June 8, 2021. M.B. testified the mop incident occurred sometime during the end of May, and she sent a text to Fueller regarding the incident because Fueller did not want the information in the daycare records where father could see it. Nonetheless, an entry regarding the incident was entered into the system and was dated June 2, 2021. M.B. testified she did not make the entry. Fueller had discussed her protection order case with multiple workers at the daycare and addressed the staff in staff meetings about the importance of recording events regarding her children in the context of the protection order hearing. Fueller repeatedly discussed the upcoming protection order hearing with M.B. and asked M.B. to testify at the hearing. In fact, the day Fueller entered the Walmart note, she asked M.B. to meet for lunch and again asked M.B. to enter the note, which M.B. refused to do. At that lunch meeting, Fueller mentioned she was going to see if she could change the dates on notes, which prompted M.B. to go back through the daycare system, at which point M.B. discovered the above notes. On cross-examination, Fueller admitted the timing of the entry of the notes was a coincidence, given that the entries were made on a Friday and her protection order hearing was scheduled for the following Tuesday. Thus, there was substantial and competent evidence from which the jury could reasonably infer and conclude beyond a reasonable doubt that Fueller forged both the Walmart entry and the mop entry to use for a fraudulent or deceitful purpose in a proceeding.

Alternatively, Fueller argues that if the notes had been presented at her children's protection order hearing, the court would not be deceived about the truth of the notes, so they could not be considered false records. This is incorrect. Had the entries been presented as legitimate daycare entries, the court may have been deceived into believing the documents were legitimate

6

when, in fact, they were forgeries. Regardless, it is not the actual effect of the forgeries that is at issue, it is Fueller's intent in creating them. *State v. Ruggiero*, 156 Idaho 662, 670, 330 P.3d 408, 416 (Ct. App. 2014). In *Ruggiero*, the defendant was charged with stalking. While that case was pending, three letters were sent to the magistrate assigned to the case. *Id*. at 664, 330 P.3d at 410. The letters were purportedly from the victim and two other people indicating Ruggiero was not guilty. *Id*. The victim did not write the letter and signed an affidavit to that effect. *Id*. Ruggiero was charged with felony preparation of false evidence and, following a preliminary hearing, was bound over to district court. Ruggiero filed a motion to dismiss, which was granted, and the State appealed. *Id*.

One of the issues on appeal was whether the State presented sufficient evidence at the preliminary hearing to establish probable cause that Ruggiero committed the crime. *Id*. at 669, 330 P.3d at 415. Ruggiero argued the magistrate court did not err because there was insufficient evidence Ruggiero intended the evidence be "produced . . . upon any trial, proceeding or inquiry," as required by the statute. *Id*. This Court disagreed and held that, based on the fact that "Ruggiero sent letters, which purported to contain relevant facts concerning his culpability, to the presiding magistrate of his *pending* criminal case," there was sufficient evidence, including the reasonable inferences therefrom, that "Ruggiero intended the evidence, or at least the facts therein, be considered in an 'actual proceeding' pertaining to his criminal case." *Id*. at 670, 330 P.3d at 416. The Court went on to note that "certainly, the assertions contained in the letters that Ruggiero was innocent would be of no use to him unless they were actually considered. That Ruggiero's attempt at doing so was somewhat clumsy and ultimately ineffective does not negate any intent he had in actually producing and sending the letters." *Id*.

The evidence was sufficient for a jury to conclude beyond a reasonable doubt that Fueller created the entries with the intent that the entries, or "at least the facts therein," be used in her upcoming protection order hearing. Indeed, there would be no reason to create the entries and the entries would be of no use to Fueller unless they were considered by the court. Thus, as in *Ruggiero*, based on the evidence presented and the reasonable inferences therefrom, a jury could conclude beyond a reasonable doubt that Fueller intended to legitimize forged entries about her children by having them come from the daycare, that she did so for a fraudulent or deceitful purpose, and that she intended to use those entries in the upcoming protection order hearing.

**B.  Juror Bias**

7

The next issue is whether the district court abused its discretion in failing to disqualify a juror for cause. Fueller argues Juror 71 was biased or had an inference of bias because he believed law enforcement officers are more truthful than other witnesses.

At voir dire, defense counsel asked the venire if they were more likely to believe an officer, or another witness, regarding the color of an apple on a tree. In response, Juror 71 stated, "[An officer is] a trained professional . . . --to observe so I would expect that the officer would be . . . truthful." Defense counsel asked Juror 71 if he could be impartial. The following colloquy occurred:

| | |
|---|---|
| Juror 71: | I'll be up front. We have our business in Post Falls, a fairly large employer. We are very active in the community, and one of ours is the Post Falls Police Department and we--not frequently, but we have required their assistance multiple times so-- |
| [Defense counsel]: | Okay. |
| Juror 71: | So I am pro-Post Falls law enforcement. |
| [Defense counsel]: | Okay. |
| Juror 71: | Partially because we have to be. |
| [Defense counsel]: | Sure, and that's fine. So you'd tend to believe someone from that agency is telling the truth. |
| Juror 71: | I kind of have to. |

Defense counsel moved to have Juror 71 removed for cause. In response, the prosecutor questioned Juror 71:

| | |
|---|---|
| [Prosecutor]: | I suspect there's a lot of businesses in Post Falls that are pro-Post Falls police. |
| Juror 71: | I would agree. |
| [Prosecutor]: | The question here is can you treat a Post Falls police officer like any other witness? |
| Juror 71: | I would say absolutely, sure. |
| [Prosecutor]: | And can you give Ms. Fueller a fair trial? |
| Juror 71: | I believe so, yes. |
| [Prosecutor]: | And if we don't prove the case, can you acquit her? |
| Juror 71: | Absolutely. |
| [Prosecutor]: | I object to the motion. |

The district court denied the motion stating, "The question that was specifically asked at this time was, quote, So you'd have a tendency to believe a witness from that agency, end of quote, and I am finding that that's not in and of itself a disqualifying response, especially in light of the rehabilitation." Juror 71 was selected for the jury.

8

The goal of voir dire is to assure retention of a fair and impartial jury. *State v. Hart*, 112 Idaho 759, 761, 735 P.2d 1070, 1072 (Ct. App. 1987). A juror may be stricken for cause if either actual bias or implied bias exists. I.C. § 19-2019(1), (2). Here, because Juror 71's responses did not fit within any of the enumerated categories of implied bias under I.C. § 19-2019(1), we only address whether he had actual bias.

Actual bias is defined as:

> the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which, in the exercise of a sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality.

I.C. § 19-2019(2). Actual bias deals with the specific state of mind of an individual juror and is established by questioning the juror as to whether he or she can serve with entire impartiality. *State v. Lankford*, 162 Idaho 477, 485, 399 P.3d 804, 812 (2017). If a juror admits bias "and gives no unequivocal assurance of the ability to be impartial despite several efforts by the court or counsel to elicit such an assurance," the juror should be disqualified for lacking impartiality. *State v. Abdullah*, 158 Idaho 386, 422, 348 P.3d 1, 37 (2015) (quoting *Hauser*, 143 Idaho at 610, 150 P.3d at 303).

The district court correctly concluded that Juror 71's answers did not rise to the level of bias that warrants exclusion under I.C. § 19-2019(2). On appeal, Fueller fails to demonstrate that Juror 71 was biased against her case or either of the parties. First, generally believing officers are truthful because they are trained professionals, without reference to the specific case, or party in the case, does not constitute a "specific state of mind" to warrant exclusion under *Lankford*. Next, Juror 71's response that he generally supports a police agency does not, itself, warrant exclusion because, again, that statement lacks the required "specific state of mind" to warrant exclusion. Moreover, despite Juror 71's responses to defense counsel, after the State's follow-up questions, any concern about Juror 71's alleged bias was resolved because he unequivocally indicated he could treat the officer in this case like any other witness and would acquit Fueller if the State did not meet its burden of proof. Juror 71 also believed he could give Fueller a fair trial. The Idaho Supreme Court has reaffirmed the proposition that a trial court does not abuse its discretion by refusing to excuse for cause jurors whose answers during voir dire initially give rise to challenges for cause but who later assure the court that they will be able to remain fair and impartial. *State v. Hall*, 163 Idaho 744, 769, 419 P.3d 1042, 1067 (2018) (finding that district court did not abuse its discretion by refusing to strike juror who repeatedly stated he would consider evidence presented

and aim to be fair and impartial after his initial answers gave rise to challenges for cause). In denying Fueller's motion, the district court was entitled to rely on assurances from Juror 71 concerning partiality or bias.

Fueller argues that, on rehabilitation, Juror 71 never gave an unequivocal assurance of the ability to be impartial. At oral argument, Fueller provided context for that argument by reading the transcript and emphasizing certain words to support her argument. For example, at argument, Fueller emphasized that Juror 71's response that he "absolutely" *could* treat the officer like any other witness did not mean that he *would* do so. The State noted at oral argument that Juror 71's statement that he believed an officer would be truthful about the color of an apple has nothing to do with whether the officer was biased against Fueller or the case. The State further argued that if this Court would emphasize other words, like "absolutely," the responses have a very different meaning. Further, the State noted that Fueller urges this Court to adopt the worst possible reading of the transcript to support her argument.

The district court was in the best position to interpret Juror 71's answers and could hear first-hand whether there was any emphasis or inflection in either the question or the answer; we decline to make those inferences from a cold record. Because Fueller fails to demonstrate Juror 71 expressed an inference of bias, or actual bias against her or her case, the district court did not abuse its discretion in denying her motion to excuse Juror 71 for cause.

## C.    Evidentiary Objections

The last issue Fueller presents is whether the district court abused its discretion by sustaining some of the State's evidentiary objections during her testimony. During Fueller's testimony, the prosecutor objected to various questions on various grounds, including that the question or answer was nonresponsive, was irrelevant, lacked foundation, and/or was hearsay. Many of the objections were sustained. Fueller argues the district court erred because: (1) Fueller's responses were competent and pertinent to the questions asked; (2) her answers were relevant; (3) the district court did not apply the applicable legal standards; (4) Fueller had personal knowledge of the reported incident; and (5) her answers were not offered for the truth of the matter asserted. The State responds the district court did not abuse its discretion in sustaining the objections, and even if it did, any error was harmless.

Fueller first contends the prosecutor's objections violated her constitutional right to testify because the district court erroneously allowed the prosecutor to interrupt her. We need not address

this argument because Fueller's constitutional argument is unpreserved. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *Garcia-Rodriguez*, 162 Idaho at 275, 396 P.3d at 704. For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context. *Hall*, 163 Idaho at 772, 419 P.3d at 1070. An objection to the admission of evidence on one basis does not preserve a separate and different basis for excluding the evidence. *Id.* A party may not attempt to transform evidentiary objections at trial into claims of unobjected-to error on appeal. *See State v. Diaz*, 163 Idaho 165, 170, 408 P.3d 920, 925 (Ct. App. 2017) (finding that attempting to transform evidentiary objections into claims of unobjected to error is an incorrect application of *State v. Perry*, 150 Idaho 209, 226, 245, P.3d 961, 978 (2010)). Generally, constitutional issues will not be considered if raised for the first time on appeal. *State v. Barr*, 166 Idaho 783, 787, 463 P.3d 1286, 1290 (2020); *see State v. Ingraham*, 172 Idaho 30, 35, 528 P.3d 966, 971 (2023).

At trial, defense counsel never argued the State's objections effectively prevented Fueller from testifying in violation of her state or federal constitutional rights. Instead, that issue is raised for the first time on appeal. Because Fueller has failed to preserve her constitutional argument for appellate review, we decline to address it.

Next, Fueller argues the district court erred in sustaining the prosecutor's "nonresponsive" objections because a non-questioning party cannot make nonresponsive objections to a witness's testimony. Fueller's position is that the prosecutor's objections were designed to harass and disrupt her testimony and to take control of the presentation of evidence away from her attorney. Because her constitutional arguments are unpreserved, Fueller attempts to raise constitutional, prosecutorial misconduct, and ineffective assistance of counsel claims under the guise of evidentiary ruling errors. We decline to allow Fueller to graft unpreserved constitutional arguments onto evidentiary rulings in order to obtain a more favorable standard of review on appeal.

### 1. Nonresponsive objections

Fueller argues the district court abused its discretion by sustaining six nonresponsive objections because the objections were meritless and were "intended to harass [Fueller] and disrupt her testimony, to take control of the presentation of evidence away from her attorney, and to prevent her from fully testifying on her behalf." The State argues the district court did not abuse

11

its discretion because preventing Fueller from providing unprompted testimony was within the district court's discretion.

Preliminarily, we note that there is no constitutional right, or corresponding rule, that allows a party to testify free from objections or interruptions from the opposing party; thus, Fueller did not have a unilateral ability to control the presentation of evidence. The control of the mode and order of examining witnesses lies in the discretion of the district court as set forth in I.R.E. 611(a):

> (a) Control by the Court; Purposes. The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
> (1) make those procedures effective for determining the truth;
> (2) avoid wasting time; and
> (3) protect witnesses from harassment or undue embarrassment.

An argument similar to Fueller's was rejected in *State v. Koch*, 157 Idaho 89, 102, 334 P.3d 280, 293 (2014). There, the State asked the victim a question and Koch objected as nonresponsive. *Id.* The district court overruled the objection, explaining that it did so because a nonresponsive objection cannot generally be raised by the non-questioning party. *Id.* In considering Koch's claim that this was error, the Idaho Supreme Court cited I.R.E. 611(a) and noted that exercise of the control provided in the rule is discretionary with the trial court. *Id.* at 101, 334 P.3d at 292.

Thus, while a nonresponsive objection from a non-questioning party may be generally inappropriate; there is no blanket rule preventing a non-questioning party from objecting on nonresponsive grounds. But even if it may have been generally inappropriate for the district court to sustain the prosecutor's objections, any error is harmless because, irrespective of the prosecutor's objections, the district court could have sua sponte excluded Fueller's answers. *See State v. Weigle*, 165 Idaho 482, 487, 447 P.3d 930, 935 (2019) (finding that I.R.E. 611 supports assertion that trial court maintains broad discretion in admitting and excluding evidence). Thus, regardless of whether the prosecutor objected, the district court had independent authority pursuant to I.R.E. 611 to control the mode and order of examining Fueller and the way her testimony was presented and did not abuse its discretion in doing so.

Even if we address Fueller's claim on the merits, her arguments are unpersuasive. Evidentiary errors are reviewed under the harmless error test, not the fundamental error test. *State v. Garcia*, 156 Idaho 352, 356-57, 326 P.3d 354, 358-59 (Ct. App. 2014); *State v. Jackson*, 151

Idaho 376, 378-380, 256 P.3d 784, 786-788 (Ct. App. 2011). The first nonresponsive objection Fueller challenges on appeal was made after she responded to a question about whether daycare teachers entered notes on their phones. Fueller answered: "Um, the two's class was a busy class for both sides." The second nonresponsive objection was made during Fueller's response to a question about what "issues" were occurring at the daycare with notes being entered. Fueller answered: "There are times that notes were not getting entered into the system that should've been, and, um, at staff meetings I stood up multiple times requesting--." The third objection occurred after Fueller answered a question about whether an entry was made into the daycare records regarding one of her children's suspected urinary-tract infection. Fueller responded: "I don't know specifically if it was entered at the time, but it should've been around mid-April." The prosecutor also moved to strike this answer, which the district court granted. The fourth objection was made during Fueller's response to what the policy was when entries were not entered into the daycare system. Fueller answered:

> Well, depending on what type of entry, um, most of the time those entries would get entered at the end of the day when there was down time or during nap times because teachers were busy so we would have to enter them later. I didn't always enter many of the notes because I was a--

The fifth objection was made after Fueller's trial attorney asked Fueller: "When were you required to sign your notes?" Fueller answered: "I think that it was encouraged to sign our notes, but as we got busy, most were just trying to get the notes in." The prosecutor also moved to strike this answer, which the district court granted. The sixth objection interrupted Fueller as she was answering a question about whether she had a conversation with the daycare manager about the Walmart note. Fueller responded: "I did. I tried to show it to her to find out if a--."

The district court did not abuse its discretion because Fueller's answers to the questions noted above were nonresponsive. For the second objection, instead of answering what issues there were with notes being entered, Fueller began explaining her conduct at staff meetings. For the fourth objection, instead of explaining what the policy was when entries were not entered into the daycare system, Fueller began explaining why her notes were not always entered. After the fourth objection, the court even explained to Fueller why her testimony was improper, stating, "It means your answer was not responsive--the last part of your answer was not responsive to the question." Despite this, Fuller continued to provide nonresponsive testimony. Before the sixth objection, instead of answering whether she had a conversation with the daycare manager about the Walmart

13

note, Fueller started explaining what happened during that conversation. The district court, after sustaining the sixth objection, explained: "It calls for a 'yes' or 'no' answer." This was not an abuse of discretion as Fueller was not answering the question put to her; instead, she was providing improper narrative testimony. Thus, the district court did not abuse its discretion in sustaining the objections that interrupted Fueller.

Next, Fueller argues the district court erred by sustaining the prosecutor's motion to strike her testimony after the district court sustained the prosecutor's nonresponsive objections. Fueller argues these interruptions prevented her trial attorney from conducting her direct examination and controlling the interrogation. The State responds the district court did not err by granting the motion to strike Fueller's testimony because doing so was within the district court's discretion to control Fueller's direct examination.

Fueller cites *State ex rel. Rich v. Bair*, 83 Idaho 475, 365 P.2d 216 (1961) for the proposition that a non-questioning party has no right to have testimony stricken for being nonresponsive. However, the *Bair* Court specifically limited its holding:

> Appellants contend that only the examining party can move to strike the answer of a witness as being unresponsive. This contention generally is correct, subject, however, to the inherent power of the trial judge in his sound discretion to control the progress of the trial to promote the ends of justice.

*Id.* at 481, 365 P.2d 222. Thus, *Bair* does not support Fueller's position for two reasons. First, *Bair* specifically holds that any rule regarding objections to nonresponsive questions is subject to the inherent authority of the court to control the progress of trial, which includes the presentation of evidence. Second, *Bair* was issued decades before the rules of evidence were adopted and, thus, to the extent *Bair* conflicts with I.R.E. 611, the rule controls. *State v. Jones*, 167 Idaho 353, 363, 470 P.3d 1162, 1172 (2020) (holding that Idaho Rules of Evidence replaced common law rules of admissibility). According to the rules of evidence, a district court has discretion to exercise reasonable control over the mode and order of examining witnesses and presenting evidence. I.R.E. 611(a); *see Koch*, 157 Idaho at 102, 334 P.3d at 293.

In this case, the district court could have interrupted and excluded Fueller's testimony sua sponte so it did not abuse its discretion in sustaining the prosecutor's objections, which could arguably be viewed as merely prompting the district court to exercise its inherent authority in this regard, as the district court did on the sixth objection at issue when it told Fueller the question

14

called for a "yes" or "no" answer. But even if the district court erred, as discussed *infra*, any error was harmless.

### 2. Relevance and foundation objections

Fueller argues the district court abused its discretion by sustaining one relevance objection and three foundation objections. The one relevance objection Fueller challenges was a question by her trial attorney concerning the initial abuse investigation: "What did you think the report was about?" The first and second foundation objections were made in successive statements by Fueller and her trial attorney. The first was made after Fueller answered a question about why she did not intend to use the daycare notes at her protection order hearing. Fueller responded: "Well, the test note I put in was a test, It wasn't ever to be used. It was supposed to be deleted." The second foundation objection was made in response to a question from Fueller's trial attorney, who asked Fueller: "Okay. Were any of these test notes ever used at the protection order hearing?" The third foundation objection was made during Fueller's response to her trial attorney asking: "Okay. Did other staff members enter notes for incidents that didn't occur at the center?" Fueller answered: "Yes, they--" before she was interrupted by the objection. We decline to address the merits of these objections because even if the district court erred in sustaining them, any error was harmless.

### 3. Hearsay objections

Fueller argues the district court abused its discretion by sustaining seven hearsay objections. The first hearsay objection Fueller challenges was made in response to Fueller's answer to her trial attorney's question about the Walmart incident. Fueller responded: "[P.F.'s] arm being pulled by her father in Walmart." The second hearsay objection was made in response to Fueller's answer to who told her about the Walmart incident. Fueller responded: "Mandi did the next day at work." The third hearsay objection was made after Fueller responded to how she was made aware of the second incident reported. Fueller answered: "Disclosure by my child." The fourth hearsay objection was made in response to Fueller's answer to whether she asked for missing daycare records to be entered. Fueller responded: "Yes. Every time she told me." The fifth hearsay objection was made in response to Fueller's trial attorney asking her: "Okay. Did you ask [the owner/manager] about test notes in the daycare system?" The sixth and seventh hearsay objections were made to successive questions from Fueller's trial attorney, who asked her: "Did you ever make your attorney aware that these notes existed?" and "Did you provide a copy

of these notes to your attorney?" We decline to address the merits of these objections because even if the district court erred in sustaining them, any error was harmless.

In this case, whether this Court analyzes each individual evidentiary ruling or the aggregate of all the evidentiary rulings, when weighing the probative force of the record as a whole while excluding the allegedly erroneously admitted evidence and at the same time comparing it against the probative force of the error, any error was harmless. The evidence established that Fueller entered the two daycare entries that supported her claim that her ex-husband physically and sexually abused her daughters. Fueller's trial strategy was that the entries were not false and that she did not intend to use the entries in the protection order hearing on June 8. None of the district court's rulings prevented Fueller from presenting a full defense, pursuing her theory of defense, or testifying in a way that presented her version of the facts. With each objection that was sustained, Fueller's attorney could have re-asked the question in a way that would elicit a non-objectionable answer. As such, any error in excluding these questions or answers is minimal compared to the probative force of the record establishing Fueller's guilt beyond a reasonable doubt without the alleged error.[2]

## IV.

## CONCLUSION

There was sufficient evidence to convict Fueller of preparing false evidence. The district court did not abuse its discretion in denying Fueller's motion to disqualify Juror 71 for cause. Fueller failed to preserve her argument that the district court's evidentiary rulings resulted in a violation of Fueller's constitutional rights. We decline to address each of Fueller's evidentiary arguments because any error committed by sustaining them was harmless error. Fueller's judgment of conviction and sentence are affirmed.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.

---

[2] In her conclusion, Fueller asks this Court to remand to a different judge. While we are not remanding this case, we take this opportunity to remind counsel of the seriousness of a claim of bias against a judge. Such a claim must be supported by evidence. In this case, there is no evidence to support a claim of bias; Fueller neither provides argument nor cites anything from the record to support her position that the district judge had a vindictiveness against her or was biased against her attorney. To the extent this request is based on *who* the district judge is, such a request is baseless.